IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID TIPSWORD, as Trustee of the Mildred E. Tipsword Trust, individually and on behalf of all others similarly situated, et al., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL NO. 09-390-GPM ) |
| I.F.D.A. SERVICES, INC., an Illinois corporation, et al., | ) Consolidated with: ) CIVIL NO. 09-1008-GPM and ) CIVIL NO. 10-1000-GPM |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

## I. INTRODUCTION

This matter is before the Court on a motion to dismiss brought by Defendant Merrill Lynch Bank & Trust Co., FSB ("ML Trust") (Doc. 190). Plaintiffs Clancy-Gernon Funeral Homes, Inc., Aaron Todd Dean d/b/a Bass Patton Dean Funeral Home and Toberman-Dean Funeral Home, Fred C. Dames Funeral Homes, Inc., McCracken-Dean Funeral Home, Inc., Knapp Funeral Homes, Inc., John G. Adinamis Funeral Director, Ltd., and L.R. Osborn & Son Funeral Home are a group of funeral homes licensed to do business in Illinois; they will be referred to hereinafter in this Order collectively as "the Funeral Home Plaintiffs." The Funeral Home Plaintiffs bring suit against ML Trust and Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), Merrill Lynch Life Agency, Edward Louis Schainker, Paul W. Felsch, Mark A. Summer, Mark K. Cullen, and Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., in connection with losses

sustained by the Illinois Funeral Directors Pre-Need Trust ("the Trust"), a fund maintained by the Illinois Funeral Directors Association ("IFDA") to hold monies paid by customers of funeral homes for future funeral and burial services. By way of background to this case, under the Illinois Funeral or Burial Funds Act ("Funds Act"), 225 ILCS 45/1 *et seq.*, when a consumer enters a pre-need contract with a funeral home for future funeral and burial services and agrees to have the contract funded by the Trust, the consumer's funds then are held by the Trust until such time as the consumer withdraws the funds or the funds are used for the funeral and burial services. *See* 225 ILCS 45/1b; 225 ILCS 45/4. The Funds Act fixes a fiduciary duty of prudence on the trustee or trustees of the Trust. *See* 225 ILCS 45/4a(a). The Funds Act also imposes restrictions on the use of life insurance policies to fund the Trust. *See* 225 ILCS 45/2a. In addition to the duties imposed on trustees by the Funds Act, the Illinois Trusts and Trustees Act, 760 ILCS 5/1 *et seq.*, requires fiduciaries of a trust to account to trust beneficiaries. *See* 760 ILCS 5/11. Finally, under the Illinois Corporate Fiduciary Act, 205 ILCS 620/1-1 *et seq.*, a corporation is required to obtain a certificate of authority to conduct a trust business. *See* 205 ILCS 620/2-4.

According to the Funeral Home Plaintiffs' operative complaint in this case (Doc. 145), the Funds Act allows a portion of the funds in the Trust to be invested in order to ensure that the accounts of purchasers of pre-need funeral and burial services keep pace with inflation. In general, the complaint states, there are two kinds of pre-need contracts, guaranteed and non-guaranteed. With a guaranteed contract, the customer pays the full costs of funeral and burial up front, so that the risk of non-performance is on the funeral home. With a non-guaranteed contract, the price of funeral and burial services is not fixed, and monies paid on the contract are regarded as an advance against the cost of funeral and burial services; thus, the risk of non-performance is on the customer.

According to the Funeral Home Plaintiffs, regardless of whether a given pre-need contract is guaranteed or non-guaranteed, funeral homes are compelled in all cases to provide funeral and burial services to pre-need customers to preserve customer goodwill. It appears from the allegations of the complaint that in 1986 the IFDA embarked on a practice of using Trust monies to purchase variable universal life insurance policies from Merrill Lynch and affiliated companies and persons, including key man policies taken out on the lives of funeral directors who were IFDA members. The complaint alleges that Merrill Lynch and its affiliates reaped significant profits from the policies in the form of commissions, premiums, and fees on the investments underlying the cash value of the policies. However, the policies proved to be a bad investment for the Trust due to difficulties in cashing them out to pay for contracted-for funeral and burial services and because of the volatility of the policies as an investment vehicle. According to the complaint, as a result of the investment of Trust funds in life insurance, the Trust has lost approximately $100 million in value, so that funeral homes participating in the Trust are being forced to pay out of their own pocket for funeral and burial services for pre-need customers.

With respect to ML Trust in particular, the Funeral Home Plaintiffs allege that in September 2007 IFDA members learned that the Illinois Comptroller's Office ("IOC") had removed I.F.D.A. Services, Inc. ("I.F.D.A. Services"), a corporation created by the IFDA to act as trustee of the Trust, from its trusteeship on the grounds that I.F.D.A. Services lacked a certificate of authority to conduct a trust business. In May 2008, ML Trust became interim trustee of the Trust and, in October 2008, ML Trust became the official trustee. The Funeral Home Plaintiffs claim that at the time ML Trust became the trustee, they were compelled by the IOC to release any claims for damages that might arise against ML Trust for actions taken as trustee; the IOC, the Funeral Home

Plaintiffs allege, threatened to revoke their licenses to do business unless they signed the releases. The purpose of making ML Trust the trustee, according to the Funeral Home Plaintiffs, was to ensure that Merrill Lynch and its affiliates, with the connivance of a friendly trustee, continued to enjoy substantial revenues from the life insurance policies held as investment vehicles in the Trust. Also, the Funeral Home Plaintiffs allege, ML Trust received excessive fees in return for acting as trustee. The Funeral Home Plaintiffs allege that not until late 2009 or early 2010, after the policies had shed enormous value due to market downturns, did ML Trust begin surrendering the policies. The Funeral Home Plaintiffs assert claims against ML Trust for: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.; civil conspiracy; breach of fiduciary duty; and negligence. Additionally, the Funeral Home Plaintiffs seek certification of a class defined as: "All IFDA member funeral homes in Illinois that have deposited funds received from preneed planning customers in the Tax-Exempt Trust from 1986 to the present[.]" Doc. 145 at 64 ¶ 88. Federal subject matter jurisdiction is proper on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). ML Trust has moved to dismiss the Funeral Home Plaintiffs' claims against it, and the motion has been fully briefed. The Court rules as follows.

## II. ANALYSIS

### A. Legal Standard

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in a plaintiff's complaint as true. *See* Fed. R. Civ. P. 12(b)(6); *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002); *S.C. Johnson &*

*Son, Inc. v. Buske*, Civil No. 09-286-GPM, 2009 WL 3010833, at *8 (S.D. Ill. Sept. 17, 2009). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Heinze v. Southern Illinois Healthcare*, Civil No. 08-672-GPM, 2010 WL 276722, at *2 (S.D. Ill. Jan. 19, 2010). A complaint should not be dismissed under Rule 12(b)(6) unless it either fails to provide adequate notice – as has been required consistently under Rule 8 of the Federal Rules of Civil Procedure – or does not contain "enough facts to state a claim to relief that is plausible on its face," that is, the claim has not been "nudged . . . across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A complaint need not 'allege all, or *any*, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)) (emphasis in original). Nevertheless, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the . . . grounds . . . of his . . . entitlement to relief . . . requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *James v. Illinois Sexually Dangerous Persons Act*, Civil No. 09-40-GPM, 2009 WL 2567910, at *2 (S.D. Ill. Aug. 19, 2009) (quoting *Bell Atl.*, 550 U.S. at 555) (brackets omitted).[1]

---

1. It should be pointed out as well that although, as already has been discussed, the Funeral Home Plaintiffs seek to represent a class, at this juncture the Court's concern is solely with whether, as individuals, the named Plaintiffs in this case have stated a claim upon which relief can be granted. *See Whitwell v. Wal-Mart Stores, Inc.*, Civil No. 09-513-GPM, 2009 WL 4894575, at *2 n.2 (S.D. Ill. Dec. 11, 2009).

## B. Standing

The Court addresses first ML Trust's contention that the Funeral Home Plaintiffs lack standing to assert claims against it. Although ML Trust frames this issue as one that implicates Article III standing and thus the Court's subject matter jurisdiction, in fact ML Trust is simply invoking the principle that under Illinois law standing to sue third parties to assert the prerogatives of a trust normally lies solely with the trustees, not with a beneficiary. *See, e.g., Godfrey v. Kamin*, No. 99 C 3230, 2000 WL 1847768, at *2 (N.D. Ill. Dec. 14, 2000) (citing *Axelrod v. Giambalvo*, 472 N.E.2d 840, 845-46 (Ill. App. Ct. 1984)); *Madden v. University Club of Evanston*, 422 N.E.2d 1172, 1174 (Ill. App. Ct. 1981). This argument fails for several reasons. First, while the Funeral Home Plaintiffs are asserting injuries to the Trust, they also are asserting injuries that are direct, not derivative. *See Finch v. Finch*, No. 08-cv-408-JPG, 2009 WL 310776, at *4 (S.D. Ill. Feb. 9, 2009) (a trust beneficiary who alleged that he was not receiving funds owed him under a trust document stated a claim for a direct injury, not a derivative one belonging to the trust). Also, while it is the case that the Funeral Home Plaintiffs are not beneficiaries of the Trust within the meaning of the Funds Act, the Court fails to see why, as a matter of common law, they are not contingent beneficiaries of the Trust. *See IFS Indus., Inc. v. Stephens*, 205 Cal. Rptr. 915, 921-22 (Cal. Ct. App. 1984) (holding that funeral homes that had deposited funds in California's pre-need trust had a beneficial interest in the funds on deposit that, though contingent, was sufficient to give the corporate owner of the funeral homes standing to sue for injuries to the trust). Finally, assuming that the Funeral Home Plaintiffs are contingent beneficiaries of the Trust, there is an exception to the general rule that beneficiaries cannot sue for injuries to a trust where, as is alleged here, the trustee of a trust is itself involved in culpable misconduct against the trust, necessitating the bringing

of an action by a beneficiary of the trust. That exception provides that, where there is a need to bring an action for injuries to a trust:

> If the trustee refuses to bring the action, after demand, or fails to act, or the trusteeship is vacant, or the trustee has been absent for many years, or the trustee has an adverse interest, or has conspired to defeat the trust, or the trustee is held to be estopped to sue the third party, the beneficiary may bring the action against the third person.

George Gleason Bogert, George Taylor Bogert & Amy Morris Hess, The Law of Trusts And Trustees § 869 (3d ed. 2000 & Supp. 2010) (footnotes omitted) (collecting cases). *See also Edgeworth v. First Nat'l. Bank of Chicago*, 677 F. Supp. 982, 990 (S.D. Ind. 1988 ) (applying Illinois law) (an income beneficiary had standing to pursue claims against a trustee and third persons who had participated in alleged breaches of fiduciary duty). Furthermore, "[i]f the trustee in breach of trust transfers trust property to a person who is not a bona fide purchaser, an action can be maintained against the transferee either by the beneficiary or by the trustee." Restatement (Second) of Trusts § 294 (1959). *See also Keach v. U.S. Trust Co., N.A.*, 244 F. Supp. 2d 968, 972 (C.D. Ill. 2003) (quoting *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000)) ("It has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty.") (brackets omitted). In light of these principles, the Court finds that the Funeral Home Plaintiffs have standing to sue ML Trust.[2]

---

2. Naturally, if the Funeral Home Plaintiffs have a beneficial interest in the Trust, this also defeats ML Trust's claim that the Funeral Home Plaintiffs were owed no fiduciary duty by ML Trust. Accordingly, the Funeral Home Plaintiffs have stated a claim against ML Trust for breach of fiduciary duty.

C. **Consumer Fraud**

As noted, the Funeral Home Plaintiffs assert a claim against ML Trust under the ICFA. That statute provides, in relevant part, that "[a]ny person who knowingly violates . . . the Illinois Funeral or Burial Funds Act . . . commits an unlawful practice within the meaning of this Act." 815 ILCS 505/2Z. The statute further provides, in relevant part, that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person[.]" 815 ILCS 505/10a. For ICFA purposes, "[t]he term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Likewise, under the statute, "the term 'person' includes any . . . trust . . . and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." 815 ILCS 505/1(c). ML Trust urges that the Funeral Home Plaintiffs' ICFA claim be dismissed because the Funeral Home Plaintiffs are not consumers under the ICFA, and ML Trust is not a person engaged in trade or commerce. The ICFA "is primarily concerned with protecting consumers." *Web Commc'ns Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 323 (N.D. Ill. 1995). Obviously, under the circumstances of this case, the Funeral Home Plaintiffs are persons or entities that have purchased goods and services (in this instance the services of ML Trust as trustee of the Trust) for use in their business and thus are not consumers within the meaning of the ICFA. *See Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (a business purchaser is not a "consumer" under the ICFA because the purchaser's only use of the purchased product is as an input into making of the product that the purchaser sells); *First Magnus Fin. Corp. v. Dobrowski*, 387 F. Supp. 2d 786, 794 (N.D. Ill. 2005) (a mortgage company was not a consumer and

thus could not maintain a claim against a title insurer under the ICFA where the company sold a loan and the title insurance that went along with it on the secondary mortgage market in the ordinary course of its business). However, the fact that an ICFA plaintiff is not a consumer is not necessarily fatal to a claim under the statute, provided the claim satisfies the "consumer nexus" test, that is, it involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *See ASI Acquisition, LLC v. Rayman*, No. 01 C 165, 2002 WL 335311, at *2 (N.D. Ill. Feb. 28, 2002); *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 40-41 (Ill. App. Ct. 1989). In this instance, it is apparent from the allegations of the Funeral Home Plaintiffs' complaint that the alleged knowing violations of the Funds Act by ML Trust at issue in this case implicate consumer protection concerns, specifically, the cost and availability of pre-need funeral and burial services, thus satisfying the requirement of a consumer nexus. *See Gadson v. Newman*, 807 F. Supp. 1412, 1421 (C.D. Ill. 1992) (allegations that deceptive trade practices increased health care costs satisfied the consumer nexus requirement for standing under the ICFA). As to ML Trust's contention that it was not engaged in trade or commerce at the times relevant to this case, the Court finds this contention to be baseless. As noted, ML Trust, as a trust business, is a "person" within the meaning of the ICFA. Under the statute, "[t]he terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f). Under this definition, ML Trust plainly is engaged in trade or commerce within the meaning of the ICFA. The Court concludes that the Funeral Home Plaintiffs have stated an ICFA claim.

**D. Release of Claims**

The Court turns next to ML Trust's argument that the Funeral Home Plaintiffs have released their claims against ML Trust. As already has been discussed, in 2008 when ML Trust became trustee of the Trust, the Funeral Home Plaintiffs executed a release of claims they might have against ML Trust for acts taken in the course of its trusteeship. The Funeral Home Plaintiffs argue that these releases were executed in the face of threats by the IOC to revoke their licenses to do business unless a fiduciary with a certificate of authority to conduct a trust business in Illinois were installed at the helm of the Trust. Accordingly, the Funeral Home Plaintiffs contend, the releases are void as being the product of duress. Economic duress is present where one is induced by a wrongful act of another to make a contract under circumstances which deprive him or her of the exercise of free will, and a contract executed under economic duress is voidable. *See RTC v. Ruggiero*, 977 F.2d 309, 313 (7th Cir. 1992) (citing *Alexander v. Standard Oil Co.*, 423 N.E.2d 578, 582 (Ill. App. Ct. 1981)); *Hurd v. Wildman, Harrold, Allen & Dixon*, 707 N.E.2d 609, 614 (Ill. App. Ct. 1999). To sustain a claim for economic duress sufficient to void a contract, a plaintiff must establish the following: (1) wrongful acts or threats by the defendant; (2) financial distress caused by the defendant's wrongful acts or threats; and (3) the absence of reasonable alternatives to the defendant's terms. *See Ficke v. Johns*, No. 95 C 939, 1996 WL 99424, at *4 (N.D. Ill. Mar. 4, 1996); *Eastern Steel Corp. v. Edward Gray Corp.*, No. 92 C 1442, 1993 WL 57541, at *4 (N.D. Ill. 1993); *Lawless v. Central Prod. Credit Ass'n*, 592 N.E.2d 1210, 1217 (Ill. App. Ct. 1992). To establish a claim of compulsory duress under Illinois law sufficient to void a contract or release, a party must demonstrate that the duress left such party "bereft of the quality of mind essential to the making of a contract." *Enslen v. Village of Lombard*, 470 N.E.2d 1188, 1193 (Ill. App. Ct. 1984) (quoting *Kaplan v. Kaplan*, 182

N.E.2d 706, 709 (Ill. 1962)). "The legal conception of economic or compulsory duress is in forcing a person to act against his own will" and, correspondingly, duress "does not exist when the person upon whom it has been so charged had an option or choice as to whether he will do the thing or perform the act said to have been done under duress." *Joyce v. Year Invs., Inc.*, 196 N.E.2d 24, 26 (Ill. App. Ct. 1964). Acts or threats cannot constitute duress unless they are wrongful, but this rule is not limited to criminal, tortious, or contractual violations, but extends to acts that are wrongful in a moral sense as well. *See De Fontaine v. Passalino*, 584 N.E.2d 933, 940-41 (Ill. App. Ct. 1991); *Stofer v. First Nat'l Bank of Effingham*, 571 N.E.2d 157, 168 (Ill. App. Ct. 1991). Mere annoyance, vexation, embarrassment, a difficult bargaining position, or the pressure of financial circumstances, however, is not enough to establish duress and instead there must be some imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another. *See Butitta v. First Mortgage Corp.*, 578 N.E.2d 116, 120 (Ill. App. Ct. 1991); *Herget Nat'l Bank of Pekin v. Theede*, 537 N.E.2d 1109, 1112 (Ill. App. Ct. 1989); *Kewanee Prod. Credit Ass'n v. G. Larson & Sons Farms, Inc.*, 496 N.E.2d 531, 534 (Ill. App. Ct. 1986). Here the Funeral Home Plaintiffs specifically have alleged that the releases at issue were procured through duress. The matter of the validity of the releases will have to be decided at a later stage of this case.[3]

---

3. The Court has considered ML Trust's remaining arguments for dismissal and finds them to be without merit. The Funeral Home Plaintiffs clearly have stated a claim for civil conspiracy and negligence under Illinois law. Additionally, their negligence claim is not premised on a contractual duty and thus is not within the scope of the so-called "*Moorman* doctrine" or "economic loss doctrine" prohibiting the bringing of claims in tort for breaches of contractual duties. *See FDIC v. Miller*, 781 F. Supp. 1271, 1276-77 (N.D. Ill. 1991) (citing *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982)) (holding that the *Moorman* doctrine did not bar an action for breach of fiduciary duty).

## III. Conclusion

For all of the foregoing reasons, ML Trust's motion to dismiss the claims of the Funeral Home Plaintiffs (Doc. 190) is **DENIED**.

**IT IS SO ORDERED.**

DATED: June 21, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge