# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE Southern District of Illinois

| | |
|---|---|
| CLAUDIA WYNN BURNS, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>IFDA SERVICES, INC., *et al.*,<br><br>       Defendants. | No. 09-cv-390-GPM-DGW<br><br>Judge G. Patrick Murphy |
| CLANCY-GERNON FUNERAL HOMES, INC., *et al.*, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., *et al.*,<br><br>       Defendants. | No. 3:09-cv-01008-GPM-DGW<br><br>Judge G. Patrick Murphy |
| PETTETT FUNERAL HOME, LTD., et al., on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al.,<br><br>       Defendants. | No. 3:10-cv-01000-GPM-DGW<br><br>Judge G. Patrick Murphy |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered as of Feb. 15, 2012, subject to approval by Judge G. Patrick Murphy of the United States District Court of the Southern District of Illinois in the Consolidated Class Actions (capitalized terms defined in Section I below), among and between the Class Representatives, for themselves and on behalf of the putative Settlement Classes and Defendants.

RECITALS

WHEREAS, all defined terms used herein shall have the meaning set out in Section I below;

WHEREAS, at various points between 1986 and the present, Defendants were involved in managing, investing, administering, advising, or providing services relating to the Trust;

WHEREAS, Class Representatives have brought putative class action lawsuits, which have been consolidated in the Consolidated Class Actions;

WHEREAS, in the Consolidated Class Actions, Class Representatives, on behalf of both the Consumer Class and the Provider and Trustee Class, have asserted various claims against Defendants based on the Defendants' alleged conduct in regards to managing, investing, administering, advising, or providing services relating to the Trust, including claims that Defendants are liable either individually or collectively for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, civil conspiracy, unjust enrichment, fraud, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, negligence, breach of contract and legal malpractice;

WHEREAS, Regions Morgan Keegan Trust ("Regions"), a division of Regions Bank, is the Trustee to numerous Affected PreNeed Contracts, and Regions has assigned to certain of the Plaintiff funeral homes (Clancy-Gernon Funeral Homes, Inc.; Aaron Todd Dean d/b/a Bass Patton Dean Funeral Home and Toberman-Dean Funeral Home; Fred C. Dames Funeral Homes, Inc.; McCracken-Dean Funeral Home, Inc.; Knapp Funeral Homes, Inc.; John G. Adinamis Funeral Director Ltd.; and L.R. Osborn & Son Funeral Home) any and all rights Regions may have as a

Trustee to pursue claims against any entity or individual arising out of or relating to the facts alleged in the Consolidated Class Actions, including but not limited to the claims arising out of or relating to the management, investing, administration, advice, or services relating to the Trust at any time prior to the date of this Agreement and by virtue of this assignment, the Class Representatives have filed claims on behalf of Regions as Trustee, and the interests of all other Trustees similarly situated.

WHEREAS, on or about November 3, 2008, Merrill Lynch Bank & Trust Co., FSB, now known as Bank of America, N.A. ("MLTC") became successor Trustee to the Trust pursuant to the terms of the agreements by and between MLTC and the various Providers designating MLTC as successor Trustee, and remains the Trustee as to certain Affected PreNeed Contracts;

WHEREAS, MLTC has negotiated and entered this Settlement Agreement in its capacity as a defendant in the Consolidated Class Actions and the Affiliated Actions and not in its capacity as successor Trustee of the Trust or any of the Affected PreNeed Contracts, and does not, by its execution of this Settlement Agreement, purport or intend to take any action on behalf of any of the Affected PreNeed Contracts for which it is Trustee, or in any way compromise, settle, release, discharge or in any way affect any claim on behalf of any Class Member;

WHEREAS, Fiduciary Partners, Inc. has indicated its willingness to act as Special Trustee, for the limited purpose of evaluating the Settlement Agreement and deciding whether or not to Opt Out of the Settlement Agreement for each Affected PreNeed Contract for which MLTC would otherwise be empowered to act hereunder;

WHEREAS, in the Consolidated Class Actions, Class Representatives have claimed the Settlement Classes sustained damages and other injuries as a result of Defendants' conduct, and have sought restitution on behalf of the Trust and damages and compensation on behalf of the Settlement Classes, including: (a) out-of pocket losses; (b) diminution in the value of the Trust; (c) excess fees

paid to Defendants; (d) pre-judgment and post-judgment interest as allowed by law; (e) punitive damages as allowed by law; (f) statutory damages under the Illinois Consumer Fraud and Deceptive Business Practices Act; and (g) Class Representatives' costs and expenses for the Consolidated Class Actions, including reasonable attorneys' and experts' fees;

WHEREAS, Defendants deny Class Representatives' allegations of unlawful or improper conduct, damages, or other injuries;

WHEREAS, on May 18, 2009, Merrill Lynch Life Agency Inc. ("MLLA") entered into a Stipulation and Consent Order with the DOI, through which MLLA agreed to deposit Eighteen Million Dollars ($18,000,000) into the DOI Fund;

WHEREAS, on or about July 7, 2009, funeral directors, who are among the Class Representatives for the Provider and Trustee Class, filed a lawsuit titled *Dames, et al. v. Daniel W. Hynes, et al.*, Case No. 09 CH 21989 (Ill. Cir. Ct. Cook County) on behalf of a class of funeral directors against the DOI, its Director, Michael T. McRaith and Comptroller Daniel W. Hynes which challenged certain preconditions to participation in the DOI Fund under the Stipulation and Consent Order;

WHEREAS, on or about August 17, 2009, MLLA and the DOI entered into an Amendment No. 1 to Stipulation and Consent Order and on or about February 22, 2010, MLLA and the DOI entered into an Amendment No. 2 to Stipulation and Consent Order, which removed certain preconditions to participation in the DOI Fund under the Stipulation and Consent Order;

WHEREAS, on November 19 and 20, 2009, counsel for certain Parties engaged in mediation before the Honorable Edward Infante;

WHEREAS, on September 13 and 15, 2011, counsel for certain Parties engaged in mediation before the Honorable Layn R. Phillips;

WHEREAS, in the course of discussions preceding, during, and following these mediations,

3

the Parties conducted settlement negotiations;

WHEREAS, the Parties recognize that the outcome of the Consolidated Class Actions are uncertain, and that a final resolution through the litigation process would require a long protracted adversarial litigation and appeals; substantial risk and expense; the distraction and diversion of the Parties' time, employees/personnel, and resources; and the expense of any possible future litigation raising similar or duplicative claims;

WHEREAS, Counsel for Plaintiffs have concluded, after inquiry and investigation of the facts, that the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Consumer Class and the Provider and Trustee Class; and the Parties and their counsel have agreed to resolve the lawsuits as a class action settlement according to the terms of this Settlement Agreement;

WHEREAS, Defendants deny wrongdoing and liability, but have concluded that they will enter into this Settlement Agreement, among other reasons, in order to avoid the further expense, inconvenience, burden, distractions, uncertainty, and risk of litigation and any other present or future litigation arising out of the facts that gave rise to the litigation in the Actions and Affiliated Actions;

WHEREAS, the Parties acknowledge and agree that the Parties' respective claims in and defenses to the Actions and Affiliated Actions were made in good faith and in accordance with Rule 11 of the Federal Rules of Civil Procedure, and all comparable state and federal laws and rules of professional responsibility.   The proposed Final Approval Order and Judgment will contain a statement that during the course of the Actions, the Parties and their respective counsel at all times acted in good faith.

NOW, THEREFORE, without (a) any admission or concession on the part of the Class Representatives of the lack of merit of the lawsuits, or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense by any of the Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of Class Representatives, the Settlement Classes, and the

Defendants, that the Actions be settled, compromised, released and dismissed on the merits and with

prejudice, subject to the approval of the Court as required by Federal Rule of Civil Procedure 23, on

the following terms and conditions:

## I.    DEFINITIONS

Under this Settlement Agreement, the following terms shall have the meanings set forth below:

1.     "Actions" or "Consolidated Class Actions" means the following lawsuits:   (1)

*Clancy-Gernon Funeral Homes, Inc., et al. v. Merrill Lynch, Pierce Fenner & Smith, Inc., et al.*

and *Pettett Funeral Home, Ltd. v. Merrill Lynch, Pierce Fenner & Smith, Inc. et al.* (collectively

the "Provider and Trustee Class Actions"); (2) *Burns v. IFDA Services, Inc., et al.* (the "Consumer

Class Action"), which has been consolidated with the Provider and Trustee Class Actions as Case

No. 3:09-cv-00390 (S.D. Ill.).

2.     "Adjustment" means the one-time adjustment recorded in the records of IFDA on

October 29, 2008 made to the then current principal and/or to the then current interest for certain

Pre-Need Contracts with funds on deposit in the Trust.  For the Taxable Trust, the Adjustment was

approximately $4.7 million.  For the Tax-Exempt Trust, the Adjustment was approximately $71.4

million.

3.     "Affected PreNeed Contract" means a Pre-Need Contract that had funds on deposit

in the Trust and that was subject to the Adjustment.

4.     "Affiliated Actions" means (1) *Calvert Funeral Homes Ltd. et al. v. Ninker, et al.*,

No. 09 CH 03624 (Cook County Circuit Court); (2) *Dunkle v. IFDA Services, et al.*, No. 08 L 682

(Sixteenth Judicial Circuit Court); (3) *Charles G. Kurrus, III, P.C., d/b/a Kurrus Funeral Homes*

*v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No 10-L-391 (Twentieth Judicial Circuit Court);

(4) *Fred C. Dames Funeral Homes, et al. v. Daniel W. Hynes, et al.*, No. 09-CH-21989 (Cook

County Circuit Court); (5) *Fred C. Dames Funeral Homes, Inc., et al. v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc., et al.*, Case No. 09-cv-3119 (N.D. Ill.); and *Illinois Funeral Directors Association, et al. v. Daniel Hynes*, Case No. 09 CH 19274 (Cook County Circuit Court).

5.  "Agreement" means this Settlement Agreement, inclusive of all exhibits and any addendums hereto.

6.  "Beneficiary" shall have the meaning set forth for this term in the Burial Funds Act.

7.  "Burial Funds Act" shall mean the Illinois Funeral or Burial Funds Act, 225 ILCS 45/1, *et seq.*

8.  "Class Member" means a person or entity belonging to the Settlement Classes.

9.  "Class Notice" means the forms of notice, attached hereto as Exhibit A_ agreed to by the Parties, or such other form as may be approved by the Court, which informs the Class Members of: (i) the certification of the Actions for settlement purposes; (ii) the dates and locations of the Approval Hearing; (iii) the elements and terms of the Settlement Agreement; (iv) and the process by which Class Members may Opt Out of the Settlement Classes or object to the Settlement Agreement.

10. "Class Representatives" mean the individual Plaintiffs in the Consolidated Class Actions who seek to represent their respective Settlement Classes for purposes of this Settlement Agreement. Specifically, Class Representatives for the Provider and Trustee Class are:

    a.  Clancy-Gernon Funeral Homes, Inc.;

    b.  Aaron Todd Dean d/b/a Bass Patton Dean Funeral Home and Toberman-Dean Funeral Home;

    c.  Fred C. Dames Funeral Homes, Inc.;

    d.  McCracken-Dean Funeral Home, Inc.;

    e.  Knapp Funeral Homes, Inc.;

    f.   John G. Adinamis Funeral Director Ltd.;

    g.   L.R. Osborn & Son Funeral Home;

    h.   Pettett Funeral Home, Ltd.;

and Class Representatives for the Consumer Class are :

    a.   Maria Dusenbery;

    b.   Charles and Marilyn Underwood, and

    c.   Jack Flowers.

11.    "Consumer Class" means all Purchasers and Beneficiaries of Affected PreNeed Contracts.

12.    "Counsel for Plaintiffs" means collectively:

    a.   "Provider and Trustee Plaintiffs' Counsel" consisting of: (1) Kenneth A. Wexler and Edward A. Wallace of Wexler Wallace LLP, 55 W. Monroe St. Suite 3300, Chicago, IL 60603; (2) C. Barry Montgomery and Steven J. Roeder of Williams Montgomery & John Ltd., 233 South Wacker Drive, Suite 6100, Chicago, IL 60606 (3) Douglas P. Dowd and William T. Dowd of Dowd and Dowd, P.C., 100 N. Broadway, Suite 1600, St. Louis, MO 63102; and (4) John Driscoll of the Driscoll Firm, P.C. 211 N. Broadway, St. Louis, MO 63102.

    b.   "Consumer Plaintiff's Counsel" consisting of (1) Robert M. Foote, Kathleen C. Chavez and Craig S. Mielke of Foote, Meyers, Mielke & Flowers, LLC, 3 North Second St., Suite 3000, St. Charles, IL 60174, and (2) Dale J. Aschemann and Timothy Keller of Aschemann Keller, 300 N. Monroe Street, Marion, IL 62959.

13.    "Court" means the United States District Court for the Southern District of Illinois, in which the Consolidated Class Actions are currently pending before the Honorable G. Patrick Murphy.

14.    "Defendants" means Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"); MLLA; Edward L. Schainker; Mark A. Summer; Paul W. Felsch; Mark Cullen; Sorling, Northrup, Hanna, Cullen & Cochran, Ltd.; MLTC; IFDA; I.F.D.A. Services, Inc.; Robert W. Ninker; Paul G. Dixon; Kevin Burke; Rob Konzelmann; James D. Bosma; Geoffrey W. Hurd; Charles S. Childs, Jr.; Brent M. Davis; Derek S. Johnson; Jack R. Kynion; King Sutton; Randall L. Earl; David M. McReynolds; Dennis R. Davison; Richard D. Yurs; Eric R. Trimble; Chris Wooldridge; Donald Henderson; Steven Dawson; Michelle Harrison; Michael Sayles; Vickie Diedrich; and Linda Allen. The inclusion of any entity in the foregoing list of Defendants shall not constitute a waiver of any defenses any such person or entity has as to improper service or lack of personal jurisdiction in the event that the Final Approval Order and Judgment is not entered by the Court, is not upheld on appeal, or the Settlement Agreement is otherwise terminated for any reason before the Effective Date.

15.    "Defendants' Counsel" means:

a.    Peter E. Cooper, John S. Monical, and Paul M. Weltlich of Lawrence, Kamin, Saunders & Uhlenhop, L.L.C.; and Frederick J. Hess and Winthrop B. Reed, III of Lewis, Rice & Fingersh, L.C., on behalf of MLPF&S and MLLA, ("Counsel for MLPF&S and MLLA").

b.    Phillip Stern, Michael Gurland, and Athanasios Papadopoulos of Neal, Gerber & Eisenberg LLP; and Robert J. Sprague of Sprague & Urban Law Office, on behalf of Edward Schainker.

c.    Scott C. Helmholz and Jeffrey R. Baron of Bailey & Glasser, LLP; and James R. Mendillo and Shane M. Moskop of Freeark, Harvey and Mendillo P.C., on behalf of Mark Summer.

d.    Jeffrey J. Kalinowski and Eric D. Martin of Bryan Cave LLP, on behalf of Paul Felsch.

    e.  Peter D. Sullivan, Renee O'Neill Kelly, and Mark D. Bauman of Hinshaw & Culbertson LLP, on behalf of Mark Cullen and Sorling, Northrup, Hanna, Cullen & Cochran, Ltd.

    f.  Elizabeth Herrington and Thomas A. McCann of McDermott, Will & Emery LLP; and Clyde L. Kuehn and Justin A. Kuehn of The Kuehn Law Firm, on behalf of MLTC.

    g.  Carrie A. Durkin and Jason E. Hunter of Litchfield Cavo LLP, on behalf of IFDA; I.F.D.A. Services, Inc.; Robert W. Ninker; Paul G. Dixon; Kevin Burke; Rob Konzelmann; James D. Bosma; Geoffrey W. Hurd; Charles S. Childs, Jr.; Brent M. Davis; Derek S. Johnson; Jack R. Kynion; King Sutton; Randall L. Earl; David M. McReynolds; Dennis R. Davison; Richard D. Yurs; Eric R. Trimble; Chris Wooldridge; Donald Henderson; Steven Dawson; Michelle Harrison; Michael Sayles; Vickie Diedrich; and Linda Allen.

16.    "DOI" means the Illinois Department of Insurance, formerly the Illinois Department of Financial and Professional Regulation Division of Insurance.

17.    "DOI Agreement" means the Stipulation and Consent Order entered between MLLA and the DOI, dated May 18, 2009, as amended by Amendment No. 1 to Stipulation and Consent Order, dated August 17, 2009, and by Amendment No. 2 to Stipulation and Consent Order, dated February 22, 2010.

18.    "DOI Fund" means the $18 million fund established under the "Settlement Fund" section of the DOI Agreement.

19.    "Effective Date" shall have the meaning assigned to that term in section II.H.2 of the Settlement Agreement.

20.    "Final Approval Hearing Date" shall mean the hearing date set by the Court.

21.     "Final Approval Order and Judgment" shall have the meaning assigned in section II.H.1 of the Settlement Agreement.

22.     "IFDA" means the Illinois Funeral Directors Association and I.F.D.A. Services, Inc.

23.     "ISD" shall mean the Securities Department of the Secretary of State of Illinois.

24.     "ISD Agreement" shall have the meaning assigned in section IV.C of the Settlement Agreement.

25.     "ISD Allocation" or "ISD Fund" means the monetary portion of the ISD Agreement that will be established as described in section IV.C of the Settlement Agreement and distributed as described herein.

26.     "ISD Fund Administrator" means the third party administrator appointed to administer the ISD Fund.

27.     "Notices" means the Class Notice and any other notice relating to the settlement which may be required by the Court.

28.     "Objection Date" shall have the meaning assigned to it in section II.G of the Settlement Agreement.

29.     "Opt Out" shall have the meaning assigned to it by section II.F.1 of the Settlement Agreement.

30.     "Opt Out Deadline" shall have the meaning assigned to it in section II.F.2 of the Settlement Agreement.

31.     "Parties" shall mean the Class Representatives, Defendants, and Released Entities.

32.     "Person" or "Persons" means all persons and entities (including without limitation natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, agencies, bodies, associations, partnerships, limited

liability partnerships, trusts, and their predecessors, successors, administrators, executors, heirs and assigns).

33.    "Preliminary Approval" means the entry by the Court of the Preliminary Approval Order.

34.    "Preliminary Approval Order" means the order to be entered by the Court in substantially the same form as Exhibit B hereto preliminarily approving the Settlement Agreement, certifying the Settlement Class, and approving the Class Notice, in substantially the same form as Exhibit A.

35.    "PreNeed Contract" shall have the meaning set forth for this term in the Burial Funds Act.

36.    "Provider" shall have the meaning set forth for this term in the Burial Funds Act.

37.    "Provider and Trustee Class" means all Sellers, Providers and Trustees for Affected PreNeed Contracts.

38.    "Purchaser" shall have the meaning set forth for this term in the Burial Funds Act.

39.    "QSF" means the Qualified Settlement Fund established pursuant to and in accordance with Section 468B of the Internal Revenue Code, and more fully discussed herein, established and administered by the Settlement Administrator.

40.    "Released Claims" shall have the meaning assigned to it by section III.A of the Settlement Agreement.

41.    "Released Entities" means Defendants in the Consolidated Class Actions and their parents, subsidiaries, predecessors, successors, officers, directors, agents, current and former employees, and affiliates, including, but not limited to, MLPF&S; MLLA; Merrill Lynch & Co.; Transamerica Life Insurance Company, formerly known as Merrill Lynch Life Insurance Company; Merrill Lynch Insurance Group; MLTC; Edward L. Schainker; Mark A. Summer; Paul W. Felsch;

Mark Cullen; Sorling, Northrup, Hanna, Cullen & Cochran, Ltd.; IFDA; I.F.D.A. Services, Inc.; Robert W. Ninker; Paul G. Dixon; Kevin Burke; Rob Konzelmann; James D. Bosma; Geoffrey W. Hurd; Charles S. Childs, Jr.; Brent M. Davis; Derek S. Johnson; Jack R. Kynion; King Sutton; Randall L. Earl; David M. McReynolds; Dennis R. Davison; Richard D. Yurs; Eric R. Trimble; Chris Wooldridge; Donald Henderson; Steven Dawson; Michelle Harrison; Michael Sayles; Vickie Diedrich; and Linda Allen. The "Released Entities" also include the members of the Provider and Trustee Class with respect to claims by any members of the Consumer Class relating to the management, administration or investment of pre-need funds while they were deposited in the Trust.

42.     "Releasing Parties" shall include all Class Representatives and Settlement Class Members and their respective heirs, executors, agents, officers, directors, legal representatives, professional corporations, partnerships, assigns, predecessors, affiliates, and successors.

43.     "QSF Allocation and Distribution Plan" is the plan of allocation and distribution of the QSF which shall be approved by Counsel for Plaintiffs and presented to and approved by the Court as a fair and reasonable allocation for the QSF, as detailed in section IV.G.3 of the Settlement Agreement.

44.     "Seller" shall have the meaning set forth for this term in the Burial Funds Act.

45.     "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc., which shall be retained to act in administration and distributions to Settlement Class Members under this Settlement Agreement.

46.     "Settlement Class" or "Settlement Classes" means the class and/or classes to be certified by the Court pursuant to this Agreement consisting of the Consumer Class and the Provider and Trustee Class.

47.     "Settlement Class Counsel" shall be Provider and Trustee Plaintiffs' Counsel and Consumer Plaintiffs' Counsel. "Lead Settlement Class Counsel" is comprised of Kenneth A.

Wexler and Edward A. Wallace of Wexler Wallace LLP, 55 W. Monroe St. Suite 3300, Chicago, IL 60603 and Robert M. Foote, Kathleen C. Chavez and Craig S. Mielke of Foote, Meyers, Mielke & Flowers, LLC, 3 North Second St., Suite 3000, St. Charles, IL 60174.

48.     "Settlement Class Member" is a person or entity falling within the definition of a Settlement Class and who has not validly and timely sought to Opt Out of the Settlement Class pursuant to section II.F of the Settlement Agreement.

49.     "Settlement Term Sheet" means the document dated October 21, 2011, setting forth the material terms of the settlement between Plaintiffs and Defendants MLPF&S, MLLA, MLTC, Edward L. Schainker, Paul W. Felsch, and Mark A. Summer, which is superseded by this Settlement Agreement.

50.     "Sorling" means Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., and "Sorling Defendants" means Sorling and Mark Cullen.

51.     "Special Trustee" means Fiduciary Partners, Inc., or such other Person which shall be appointed by the Court to act as a special trustee and independent fiduciary, for the limited purpose of evaluating the Settlement Agreement and deciding whether or not to Opt Out of the Settlement Agreement for each Affected PreNeed Contract for which MLTC would otherwise be empowered to act hereunder.

52.     "Taxable Trust" means the trust offered by IFDA to funeral home members from approximately 1979 to November 3, 2008, for depositing funds from pre-need funeral planning customers and advertised to both funeral home members and customers as being taxable.

53.     "Tax-Exempt Trust" means the trust offered by IFDA to funeral home members from 1986 to November 3, 2008 for depositing funds from pre-need funeral planning customers and advertised to both funeral home members and customers as being tax-exempt.

54.   "Total Benefits to the Class Members" means the total benefits received by the Settlement Class Members, and paid by or on behalf of the Released Entities, in the total amount of fifty nine million one hundred and fifty thousand dollars ($59,150,000.00).

55.   "Trust" means both the Taxable Trust and Tax-Exempt Trust.

56.   "Trustee" shall have the meaning set forth for this term in the Burial Funds Act.

## II.    COURT APPROVAL, CLASS NOTICE, OBJECTION PROCEDURES

A.    <u>Reasonable Efforts</u>

Counsel for Plaintiffs and Defendants' Counsel agree that they will use reasonable efforts to (i) recommend and obtain approval of this Settlement Agreement by the Court in accordance with the class proceedings legislation, rules, and procedures applicable in the United States District Courts in Illinois; (ii) carry out the terms of this Settlement Agreement; (iii) support adoption of this Settlement Agreement; and (iv) secure the prompt, complete and final dismissal with prejudice of the Actions and Affiliated Actions against the Defendants. Counsel for Plaintiffs shall, consistent with their obligations to their clients and the Settlement Classes, make every reasonable effort to encourage Class Members to participate in this settlement.   In the event a Class Member contacts them with respect to the Consolidated Class Action or the Settlement Agreement, Defendants and Released Entities shall refer the Class Member to the Settlement Administrator and/or Counsel for Plaintiffs.

B.    <u>Motions for Preliminary Approval</u>

Following the execution of this Agreement in the Consolidated Class Actions, Counsel for Plaintiffs shall file in the Court a motion for Preliminary Approval that seeks entry of a proposed Preliminary Approval Order (substantially in the form attached hereto as Exhibit B) that would, for settlement purposes only:

a.   Preliminarily approve this Settlement Agreement;

b. Certify the Settlement Classes under Fed. R. Civ. P. 23(a) and (b)(3) to be comprised of the respective Class Members;

c. Approve the proposed Class Notice(s) in the form substantially similar to the form attached hereto as Exhibit A;

d. Appoint Counsel for Plaintiffs as Settlement Class Counsel as contemplated by Fed. R. Civ. P. 23;

e. Appoint Lead Settlement Class Counsel as contemplated by Fed. R. Civ. P. 23;

f. Appoint the proposed Class Representatives as Class Representatives;

g. Appoint the Settlement Administrator;

h. Appoint Fiduciary Partners, Inc. as Special Trustee to perform the fiduciary role of evaluating the Settlement Agreement, and deciding whether or not to Opt Out of the Settlement Agreement, for those Affected PreNeed Contracts for which MLTC would otherwise be authorized to act hereunder;

i. Establish the QSF;

j. Request that the Court, consistent with its authority under the All Writs Act, 28 U.S.C.§1651(a), enjoin all Settlement Class Members from initiating or proceeding with lawsuits asserting claims, that have been or could have been raised by any Class Member in the Consolidated Class Actions, or Affiliated Actions, against any of the Released Entities, individually, or on behalf of any class, until entry of the Final Approval Order and Judgment.

The motion will request that the Court issue an injunction as broad and comprehensive as permitted and be included in the Preliminary Approval Order. Defendants in the Consolidated Class Actions will join in the portions of the motion seeking preliminary approval of the

Settlement Agreement and injunction, and will not contest certification of the Settlement Classes undertaken for the sole purpose of effectuating this Settlement Agreement.

    C.    <u>Stays</u>

    1.    <u>Stay of Litigation</u>:  Counsel for Plaintiffs and Defendants' Counsel will jointly move the Court to stay all matters in the Consolidated Class Actions and Affiliated Actions, except as necessary to implement, advance, or further the Settlement Agreement or settlement process, and the proposed Preliminary Approval Order of the Court granting certification of the Settlement Classes and approval of the Class Notice as contemplated in section II.B above.  In the event the Court does not stay any of the Affiliated Actions, then the Parties will jointly request that the courts in the Affiliated Actions stay the Affiliated Actions pending final approval of this Settlement Agreement.

    2.    <u>Suspension of Discovery</u>:  Until Preliminary Approval by the Court, including entry of the stay of discovery in the form contained therein, and entry of the Final Approval Order and Judgment by the Court, the Parties covenant and agree that they shall not pursue discovery and shall not in any way subsequently argue that another Party has failed to comply with suspended discovery obligations because of the suspension of discovery efforts following the execution of the Agreement.

    3.    <u>Stay of Local and State Court Actions</u>:  The proposed Preliminary Approval Order filed with the Court shall bar and enjoin all Class Members and Releasing Parties from commencing or prosecuting any action asserting any Released Claims, and shall stay any actions or proceedings brought by any member of the Settlement Class asserting any Released Claim as of the Notice Date, as defined below in section II.E.2.a.  In the event the Final Approval Order and Judgment is not entered or is reversed for any reason, or this Agreement terminates for any reason, the Parties and Released Entities shall not be deemed to have waived any rights with respect to

proceedings in the litigation of such actions that arise during the period of the stay and shall have a full and fair opportunity to present any position in any such proceedings.

     D.     <u>Certification of Settlement Classes</u>

     1.     <u>Class Definition:</u>  For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Counsel for Plaintiffs agree to seek certification of the Settlement Classes in the Consolidated Class Actions pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).  In seeking certification, Counsel for Plaintiffs shall define the Settlement Classes for certification using the definitions of Consumer Class and Provider and Trustee Class set out in this Settlement Agreement.

     2.     <u>Classes Certified for Settlement Purposes Only</u>:  Nothing in this Settlement Agreement shall be construed as an admission by Defendants that the Consolidated Class Actions or Affiliated Actions or any similar case regarding the Trust is amenable to class certification for trial purposes or any purposes other than for implementation of the terms of this Settlement Agreement.  Furthermore, nothing in this Settlement Agreement shall prevent the de-certification of the Settlement Classes or prevent Defendants from opposing class certification of the Settlement Classes if a Final Approval Order and Judgment is not entered by the Court, or is not upheld on appeal, for any reason.  The certification of the Settlement Classes shall not be treated as the adjudication of any fact or issue for any purpose other than this Settlement Agreement and shall not be considered as law of the case, *res judicata*, or collateral estoppel in any other proceeding.  Until and unless the Settlement Agreement reaches the Effective Date, the certification of the Settlement Classes shall not be treated as the adjudication of any fact or issue and shall not be considered as law of the case, *res judicata*, or collateral estoppel in this proceeding.

E.     Notices

1.     _Form of Class Notice:_  Subject to approval of the Court, Class Notice shall be in the form of Exhibit A hereto.

2.     _Dissemination of Notice:_

(a)     _Notice Date:_  Subject to approval by the Court, the Class Notice shall be disseminated, by direct mail as set forth in section II.E.2.b below and publication if necessary as set forth in section II.E.2.c below, within fifteen (15) days of the entry of the Preliminary Approval Order by the Court (the "Notice Date").

(b)     _Notice by Direct Mail:_  The Settlement Administrator shall cause notice to be disseminated by direct mail to the Consumer Class and to the Provider and Trustee Class, using name and address information provided to the Settlement Administrator by the Parties from the records of IFDA, Defendants and/or other readily identifiable sources.

(c)     _Notice by Publication:_  Subject to approval by the Court, the Settlement Administrator also shall publish the Class Notice in media distributed electronically on or before the Notice Date (including a settlement website, and newsletters and e-mails sent by IFDA to its members, such as the IFDA e-News Bulletin).  A Short Form Notice directing Class Members to the settlement website and providing a telephone number to contact the Administrator shall additionally be published in three regional newspapers in the State of Illinois.  Counsel for Plaintiffs shall design and implement the best notice practicable under Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, taking into account the membership of the Settlement Classes. Counsel for Plaintiffs and Defendants' Counsel may, at their option, cause the Class Notice or a link to the settlement website to be posted on their websites as well.  Subject to approval by the Court, all other Notices contemplated by this Agreement shall be made by direct mail.

3.    Cost of Notice:  Costs of the Class Notice, whether by mail as set forth in section II.E.2.b above, publication as set forth in section II.E.2.c above, website, or otherwise, shall be paid from the QSF.  However, any costs associated with any party or counsel's websites, any postings on those websites related to the settlement, any electronic e-mail communications by any party or counsel, or any separate communications by any party or counsel shall be paid by them respectively.

4.    Settlement Administrator to Effect Notice:  The Settlement Administrator shall be responsible for mailing the Class Notice pursuant to section II.E.2.b and for otherwise implementing and distributing any other Notices approved by the Court.

5.    Certification of Notice Given:  Within thirty (30) days of completion of the publication of the Class Notice in publications in Illinois, the Settlement Administrator shall certify to the Court that it implemented Class Notice pursuant to the procedures approved by the Court, attach a true copy of each Class Notice that was provided, and provide any other information relevant to the publication and mailing of the Class Notice and other Notices as required by the Court.

6.    CAFA Notice:  Defendants in the Actions shall serve notice of this Settlement Agreement that meets the requirements of the Class Action Fairness Act of 1995, 28 U.S.C. § 1715, on the appropriate federal and state officials not later than 10 days after the filing of this proposed Settlement Agreement with the Court.

F.    Voluntary Exclusion of Class Members from Settlement Class

1.    Opt Out Rights:  Class Members have the right to exclude themselves ("Opt Out") from this Settlement Agreement and from their respective Settlement Classes by timely following the Opt Out procedure below.  The Special Trustee, and not MLTC, shall have the sole right to Opt Out of the Settlement Agreement for those Affected PreNeed Contracts for which MLTC is

otherwise authorized to act hereunder.  Members who timely follow the Opt Out procedure shall be deemed to have Opted Out of and shall be excluded from this Settlement Agreement and from the applicable Settlement Class.  Any Class Member who does not timely Opt Out shall be bound by the terms of this Settlement Agreement and the Final Approval Order and Judgment.  Any Class Member who does not timely Opt Out shall be deemed to have taken all actions necessary to withdraw and revoke the assignment to any Person (other than to the Class Representatives) of any Released Claims against the Released Entities.

Any Class Member who timely Opts Out shall have until fourteen (14) days prior to the Final Approval Hearing Date before the Court to deliver to Counsel for Plaintiffs and the Settlement Administrator a written revocation of such Class Member's Opt Out.  Counsel for Plaintiffs shall timely apprise the Court of such revocations.

Within seven (7) days after the Opt Out Deadline, the Settlement Administrator shall furnish Counsel for Plaintiffs and Defendants' Counsel with:  (1) a complete electronic list of all Affected PreNeed Contracts for which one or more Class Members timely Opted Out before the Opt Out Deadline and for each (i) the identity and role of each Class Member associated with the Affected PreNeed Contract who Opted Out and (ii) the aggregate sum on deposit as of October 28, 2008 for the Affected PreNeed Contract; (2) the total number of Affected PreNeed Contracts and total number of Affected PreNeed Contracts for which one or more Class Members Opted Out; (3) the total sum deposited in the Tax-Exempt Trust as of October 28, 2008; and (4) the aggregate sum on deposit in the Tax-Exempt Trust for Affected PreNeed Contracts as of October 28, 2008, for which one or more Class Members Opted Out.

2.    Deadline to Opt Out:  All Class Members will be given thirty (30) days after the Notice Date (the "Opt Out Deadline") to Opt Out.

3.      Request to Opt Out:

a.      To Opt Out, a Class Member must notify the Settlement Administrator or such other person as may be designated by applicable legislation or order of the Court to receive requests to Opt Out in writing postmarked on or before the Opt Out Deadline of the Class Member's intention to exclude him/herself from that Settlement Class. The notice must be signed by the Class Member or a person authorized to execute notice on behalf of the Class Member. The notice must contain the Class Member's name, address, telephone number, and sufficient information for the Settlement Administrator to identify (i) each Affected PreNeed Contract(s) for which the Class Member acts as Seller, Provider, Beneficiary, Purchaser, and/or Trustee and, (ii) for each such Affected PreNeed Contract, the role of the Class Member.

b.      The initial determination that each request to Opt Out by a Class Member complies with the Opt Out procedures in this Settlement Agreement will be made by the Settlement Administrator and is subject to final approval by the Court as part of the Final Approval Order and Judgment. The Court may disallow any request to Opt Out that fails to comply with the provisions of the Preliminary Approval Order or the Opt Out procedures otherwise approved by the Court.

4.      Notice of Opt Out to Class Members. Within seven (7) days of receiving a request to Opt Out from a Class Member, for each Affected PreNeed Contract identified in the Opt Out, the Settlement Administrator shall send notice of the Opt-Out to the Trustee, Seller, Provider, Purchaser and Beneficiary of the Affected PreNeed Contract, except that this paragraph shall not require the Settlement Administrator to send notice to the Class Member who requested the Opt Out.

5.     <u>Defendants' Right to Terminate:</u>

a.     Either MLPF&S, MLLA or the Sorling Defendants shall have the right to terminate its, his or their respective obligations under this Settlement Agreement and thus withdraw from and renounce any benefit it, he or they would receive under this Settlement and the Settlement Agreement if either: (1) Consumer Class Members collectively associated with ██████████ or more of the Affected PreNeed Contracts Opt Out of the Settlement Class; or (2) Class Members associated with Affected PreNeed Contracts which collectively represented ██████████ or more of the sums deposited in the Tax-Exempt Trust as of October 28, 2008 Opt Out of the Settlement Class.  Any Defendant exercising a right to terminate his or its obligations under the Settlement and this Settlement Agreement under this paragraph 5 must do so within seven (7) days from receipt from the Settlement Administrator of the information set forth in section II.F.1 above.

b.     MLPF&S, MLLA and/or the Sorling Defendants shall have the right to terminate its or their obligations under this Settlement Agreement and thus withdraw from and renounce any benefits it, he or they would receive under the Settlement and this Settlement Agreement if any of the following Class Members, or any Trustee, Seller or Provider affiliated with, a part of, subsidiary of, or otherwise owned and/or in common control with any of the following Class Members Opt Out of the Settlement Class:  (1) any one or more of the Class Representatives; (2) Charles G. Kurrus, III, P.C. d/b/a Kurrus Funeral Homes ("Kurrus"); or (3) Calvert Funeral Homes, Ltd.  Any Defendant exercising a right to terminate his or its obligations under this Settlement and Settlement Agreement under this paragraph 5 must do so within seven (7) days from receipt from the Settlement Administrator of the information set forth in section II.F.1 above.

c.     Either MLPF&S, MLLA, or the Sorling Defendants shall have the right to terminate its, his or their obligations under this Settlement Agreement and thus withdraw from and renounce any benefits he, it or they would receive under this Settlement and the Settlement

Agreement if more than ████████ of the Provider and Trustee Class Opt Out of the Settlement Class. Any Defendant exercising a right to terminate his or its obligations under the Settlement and this Settlement Agreement under this section II.F.5 must do so within seven (7) days from receipt from the Settlement Administrator of the information set forth in section II.F.1 above.

      d.     If MLPF&S and/or MLLA exercise any right under this section II.F.5 to terminate its or their obligations under this Settlement and the Settlement Agreement, the Sorling Defendants shall nonetheless have the right to continue to perform their obligations under the Settlement and this Settlement Agreement and in such event: (1) the Settlement and this Settlement Agreement shall remain in effect between all Parties whose obligations hereunder have not been terminated and (2) MLPF&S and MLLA agree not to object to any request by the Sorling Defendants for a good faith finding under the Illinois Contribution Among Joint Tortfeasors Act, 740 ILCS 100/1 *et seq.*, relating to this Settlement Agreement. Any exercise of any withdrawal rights by MLPF&S and/or MLLA under this section II.F.5 will deprive Defendants MLPF&S, MLLA, Edward L. Schainker, Mark A. Summer, Paul W. Felsch, MLTC, and each of them, of any benefits under this Settlement and Settlement Agreement as MLPF&S and/or MLLA are providing all monetary consideration under this Settlement Agreement on behalf of such Defendants.

      e.     If either or both of the Sorling Defendants exercise any right under this section II.F.5 to terminate its, his or their obligations under the Settlement and this Settlement Agreement, MLPF&S and/or MLLA shall nonetheless have the right to continue to perform its or their obligations under the Settlement and this Settlement Agreement and in such event: (1) the Settlement and this Settlement Agreement shall remain in effect between all Parties whose obligations hereunder have not been terminated and (2) the Sorling Defendants agree not to object to any request by MLPF&S and/or MLLA for a good faith finding under the Illinois Contribution

Among Joint Tortfeasors Act, 740 ILCS 100/1 *et seq.*, relating to this Settlement Agreement. Any exercise of any withdrawal rights by one of the Sorling Defendants under this section II.F.5 will deprive all Sorling Defendants, and each of them, of any benefits under this Settlement and Settlement Agreement.

     f.    Information relating to the number or percentage of Opt Outs required as a precondition to any Defendant's right to terminate this Settlement Agreement shall be redacted from any publicly filed or posted version of the Agreement.

     G.    <u>Procedures for Objecting to the Settlement</u>

     Any objection to this Settlement Agreement, including any of its terms or provisions, must be served on at least one of Counsel for Plaintiffs and upon Counsel for MLPF&S and MLLA and filed with the Court in writing no later than fourteen (14) days prior to the Final Approval Hearing Date before the Court, as set forth in the Class Notice (the "Objection Date"). Any person or entity filing an objection in the Court shall, by doing so, submit himself, herself, or itself to the exclusive jurisdiction of the United States District Court for the Southern District of Illinois.

     H.    <u>Motion for Final Approval Order and Entry of Final Judgment</u>

     1.    <u>Hearing on Motion for Final Approval:</u> The motion(s) for final approval of this Settlement Agreement will be set for hearing(s) by the Court as soon as is practicable. The Class Representatives and Defendants shall seek entry of a "Final Approval Order and Judgment" (in substantially the same form as Exhibit C hereto) that, *inter alia*:

     a.    Determines that the Court has and shall retain exclusive jurisdiction over: (i) the Settlement Agreement, including its administration, consummation, claim procedures, enforcement, and any other issues or questions that may arise; (ii) the Class Representatives and disputes for purposes of the Settlement Agreement; (iii) any applications for attorneys' fees, expenses and costs related to the Settlement Agreement; and (iv) all proceedings related to this

Settlement Agreement both before and after the Final Approval Order and Judgment becomes final and is no longer subject to appeal, and over enforcement of the Final Approval Order and Judgment;

b.    Approves finally this Settlement Agreement and its terms as being a fair, reasonable, and adequate good faith settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act, and other applicable law;

c.    Determines that the Class Notice, as approved by the Preliminary Approval Order, constitutes reasonable and the best notice reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Consolidated Class Actions, the terms of the Settlement Agreement, the right to object or Opt Out, the right to appear at the hearing on the motion to enter the Final Approval Order and Judgment, and the procedure for allocating and distributing settlement funds, and that the Class Notice is adequate and sufficient to all persons entitled to receive such notices, and meets the requirements of due process and other applicable rules or laws;

d.    Rules upon Plaintiffs' Petition for Attorneys' Fees and Litigation Expenses;

e.    Rules upon Plaintiffs' Petition for Settlement Class Representation Incentive Awards;

f.    Determines that there is no just reason for delay and that the Final Approval Order and Judgment shall be final and entered; and

g.    Enters the Release and Injunction and Bar Order described in section III.

2.    <u>Effective Date:</u> If the Final Approval Order and Judgment is Entered by the Court and the time for appeal from the Final Approval Order and Judgment has elapsed (including without limitation any extension of time for the filing of any appeal that may result by operation of

law or order of the Court), with no notice of appeal having been filed, the "Effective Date" shall be the next business day after the last date on which notice of appeal could have been timely filed. If the Final Approval Order and Judgment is entered and an appeal is filed, the "Effective Date" shall be the next business day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to any Court or discretionary review by any Court remains.

3.   <u>Effect of Entry of a Final Approval Order and Judgment:</u>   The distribution procedures under the Settlement Agreement shall commence seven (7) business days after the Effective Date.

4.   <u>Motion to Void the Settlement Agreement:</u>  In the event that the termination rights in section II.F.5 above are exercised, or in the event that the Court refuses to enter a Final Approval Order and Judgment substantially in the form set out herein and in accordance with the provisions of this Settlement Agreement, or in the event a Final Approval Order and Judgment is reversed on appeal, this Settlement Agreement shall be null and void and of no force or effect and the Parties jointly shall bring a motion seeking a Court order:   (i) declaring the Settlement Agreement to be null and void and of no force or effect; (ii) setting aside any order certifying a Settlement Class on the basis of the Settlement Agreement; (iii) determining any disputes arising from any distribution of the Settlement Funds; and (iv) returning the Settlement Funds from the QSF to the Defendants in proportion to the amount paid into the Settlement Funds by those Defendants.

## III.   RELEASE AND BAR ORDER OF CLAIMS

A.   <u>Release, Discharge and Satisfaction</u>

Upon entry of the Final Approval Order and Judgment by the Court, the Releasing Parties, Released Entities and Settlement Class Members mutually forever release and discharge all Released Claims between and amongst themselves and acknowledge the full and complete

satisfaction of such Released Claims.  For purposes of this Settlement Agreement, "Released Claims" are all claims, demands, actions, suits, and/or causes of action that have been brought, or could have been brought, are currently pending or were pending, or are ever brought in the future, by, between and/or on behalf of any Settlement Class Member, Released Entity, or Releasing Party, in any forum in the United States, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, that relate in any way, directly or indirectly, to the Trust, any investments, insurance policy, or brokerage account held or opened by the Trust, or any alleged management, investment, administration, advice, or service provided to or on behalf of the Trust, including but not limited to claims, cross-claims, counterclaims, or third-party claims that were raised or could have been raised by any party in the Consolidated Class Action and/or in any of the Affiliated Actions, provided that, in the event a Seller, Provider, Purchaser, or Beneficiary of an Affected PreNeed Contract has Opted Out of the Settlement Class, Released Claims shall not include claims by the Trustee of that Affected PreNeed Contract relating solely to damages relating to that Affected PreNeed Contract.  The Released Claims include but are not limited to the allegations contained in the Consolidated Class Actions and any of the Affiliated Actions, and/or related to Defendants' conduct in managing, investing, administering, advising, or providing service to the Trust and/or relating to any uses of funds paid directly or indirectly from MLLA pursuant to the DOI Settlement, that occurred or are alleged to have occurred from the beginning of time until the entry of the Final Approval Order and Judgment, provided however that this release shall not bar any claims arising from events that occur after the Final Approval Order and Judgment.

Nothing in this Settlement Agreement is meant to release the claims of any Class Members who Opt Out of the Settlement Class.  In the event a Class Member who has Opted Out of the Settlement Class pursues a claim against a party, nothing in the Settlement Agreement shall limit

the defenses or affirmative defenses available to any party. Nothing in this Settlement Agreement is intended to limit or restrict any: (i) rights of any party or Settlement Class Member to enforce this Settlement Agreement; (ii) contract rights of any Class Member to enforce the terms of any PreNeed Contract entered into between any Consumer Class Member and Provider and Trustee Class Member for the provision of burial or funeral services and/or merchandise; or (iii) rights that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished.

B.    Covenant Not to Sue

The Releasing Parties agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing or prosecution of any suit or proceeding in any forum against any Released Entity, or against any other person or entity who may claim contribution or indemnity from or against any Released Entity, based upon or related to any Released Claim. Notwithstanding any other provision of this Settlement Agreement (including, without limitation, this section III.B), nothing in this Settlement Agreement shall be deemed to in any way impair, limit, or preclude the Releasing Parties' rights to enforce any provision of this Settlement Agreement, or any court order implementing this Settlement Agreement, in a manner consistent with this Settlement Agreement.

C.    Injunction and Bar Order

It is an essential element of the Settlement Agreement that the Released Entities obtain the fullest possible relief from further liability to anyone relating to the Released Claims, and it is the intention of the Parties to this Settlement Agreement that the Settlement Agreement eliminate any and all further risk and liability of the Released Entities relating to the Released Claims. Accordingly, the Parties agree that the Court shall include in the Final Approval Order and Judgment an injunction and bar order that permanently bars, enjoins, prohibits and extinguishes the rights of the Releasing Parties from (i) filing, commencing, prosecuting, continuing,

maintaining, intervening in, participating in (as class members or otherwise) or receiving any benefits (other than benefits from the QSF, ISD Fund or DOI Fund contemplated by this Settlement Agreement) from any lawsuit, arbitration, or administrative proceeding or order in any jurisdiction based on any or all Released Claims against one or more Released Entities or against any person or entity who may claim over against any Released Entity for contribution or indemnity; (ii) instituting, continuing, maintaining, organizing class members in, or joining with class members in any action or arbitration, including but not limited to a purported class action, in any jurisdiction, against one or more Released Entities, or against any person or entity who may claim over any Released Entity for contribution or indemnity, based on, involving, or incorporating, directly or indirectly, any or all Released Claims; and (iii) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise) or receiving any benefits (other than benefits from the QSF, ISD Fund or DOI Fund contemplated by this Settlement Agreement) from any lawsuit, arbitration, or administrative proceeding, or order in any jurisdiction based on an allegation that an action taken by the Released Entities, which is in compliance with the provisions of the Settlement Agreement, violates any legal right of any Settlement Class Member.

> D.   Dismissal With Prejudice

The Releasing Parties shall take all steps necessary to dismiss the Consolidated Class Actions and the Affiliated Actions with prejudice. It is the Parties' intention that such dismissal shall constitute a final judgment on the merits to which the principles of *res judicata* shall apply to the fullest extent of the law as to the Released Entities.

> E.   Irreparable Harm

The Parties agree that the Released Entities shall suffer irreparable harm if a Releasing Party takes action inconsistent with sections III.A – III.D above, and that in that event, a Released

Entity may seek an injunction from the Court as to such action without further showing of irreparable harm.

## IV.   ESTABLISHMENT, ESCROW AND ADMINISTRATION OF THE DOI, ISD, AND QSF FUNDS

A.   Total Benefits to the Class Members

The Total Benefits to the Class Members, by or on behalf of the Released Entities is Fifty-Nine Million One Hundred Fifty Thousand Dollars ($59,150,000), and consists of:

(1) Eighteen Million Dollars ($18,000,000) previously contributed into the DOI Fund.

(2) Twenty-Five Million Nine Hundred Thousand Dollars ($25,900,000) to be contributed into the ISD Fund pursuant to an ISD Agreement which, as a condition to this Settlement Agreement, must be effected by MLPF&S and must be administered in accordance with the requirements set forth in sections IV.C and IV.F; and

(3) Fifteen Million Two Hundred Fifty Thousand Dollars ($15,250,000) which shall be paid into the QSF to be allocated and distributed as set forth herein.

B.   Establishment of the DOI Fund

In or around May 2009, pursuant to the DOI Agreement, MLLA deposited Eighteen Million Dollars ($18,000,000) into the DOI Fund which has already been distributed.

C.   Establishment of the ISD Fund

This Settlement Agreement is conditioned upon MLPF&S executing a Stipulation to Entry of Consent Order with the ISD (the "ISD Agreement"), which requires that MLPF&S contribute Twenty-Five Million Nine Hundred Thousand Dollars ($25,900,000) to establish the ISD Fund.

D.   Establishment of the QSF

The QSF shall consist of Fifteen Million Two Hundred Fifty Thousand Dollars ($15,250,000) which shall be funded by contributions made by or on behalf of the following entities and in the following amounts:

1. Eleven Million Five Hundred Thousand Dollars ($11,500,000) contributed by MLPF&S on behalf of itself, MLLA, MLTC, Edward L. Schainker, Paul W. Felsch, and Mark A. Summer;

2. One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) contributed by or on behalf of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd. and Mark Cullen; and

3. Two Million Dollars ($2,000,000) contributed by or on behalf of IFDA ; I.F.D.A. Services, Inc.; Robert W. Ninker; Paul G. Dixon; Kevin Burke; Rob Konzelmann; James D. Bosma; Geoffrey W. Hurd; Charles S. Childs, Jr.; Brent M. Davis; Derek S. Johnson; Jack R. Kynion; King Sutton; Randall L. Earl; David M. McReynolds; Dennis R. Davison; Richard D. Yurs; Eric R. Trimble; Chris Wooldridge; Donald Henderson; Steven Dawson; Michelle Harrison; Michael Sayles; Vickie Diedrich; and Linda Allen.

E.   Administration and Distribution of the DOI Fund

In or around January 2011, the DOI Fund was distributed to certain Class Members pursuant to the allocation and subject to certain conditions specified in the DOI Agreement and/or by the DOI.

F.   Administration and Distribution of the ISD Fund

This Settlement Agreement is conditioned upon MLPF&S executing and performing its obligations under an ISD Agreement which provides for the establishment of the ISD Fund as

31

described in sections IV.C which will be distributed in a manner substantially similar to the allocation described in Exhibit D by an ISD Fund Administrator appointed with the approval of the ISD and according to the terms of the ISD Agreement.

The Parties will recommend that the Settlement Administrator be appointed as the ISD Fund Administrator. If the Settlement Administrator is appointed to act as the ISD Fund Administrator, then the Settlement Administrator shall pay all costs associated with the administration and distribution of the ISD Fund from the QSF. If the Settlement Administrator is not appointed as the ISD Fund Administrator, MLPF&S shall bear the costs associated with the ISD Fund Administrator's administration and distribution of the ISD Fund.

G.    Administration and Distribution of the QSF

1.    Settlement Administrator.

A.    The Parties shall jointly retain the Settlement Administrator prior to filing the motion for Preliminary Approval. The Settlement Administrator shall serve as the administrator of the settlement and perform the services described in this Agreement, in good faith, including, without limitation:

i.   Establishing and maintaining a QSF;

ii.  Receiving from Settling Parties, and updating and maintaining as necessary, a mailing list, mailing the Notices, and disseminating follow-up mailings set forth herein to effectuate notice;

iii. Effectuating Court-ordered Notice and certifying compliance with the terms of the Court-ordered Notice;

iv.  After preconditions have been met, distribution of settlement payments to Settlement Class Members per the Court-approved QSF Allocation and Distribution Plan;

v.  Payment, from the QSF, of any awards approved by the Court as to attorneys' fees and litigation expenses and incentive awards;

vi.  Payment, from the QSF, of all costs of Administration;

vii.  Maintain an accounting of the QSF and records of all payment to, communications with, and documents received from, Settlement Class Members;

viii.  Preparation of any applicable tax returns and tax reporting of payments;

ix.  Making determinations concerning disputes submitted by Settlement Class Members;

x.  Preparing and submitting to the Court a final accounting of the Settlement, in accordance with this Agreement;

xi.  Any other obligations established in this Agreement or subsequently agreed to by the Parties or ordered by the Court;

xii.  The Settlement Administrator shall prepare and deliver the necessary tax documentation for signatures by all necessary parties, and cause the appropriate tax filings to occur;

xiii.  The Settlement Administrator will provide copies of all cancelled settlement checks or evidence of payment, including payments of distributions of the QSF to Settlement Class Members, incentive awards and attorneys' fees and litigation expenses, to Settling Parties' Counsel;

xiv.  The Settlement Administrator shall provide proof of bonding and insurance coverage sufficient to secure the Settlement Amount;

xv.   The Settlement Administrator shall establish and administer a website with links to a sample form of Class Notice and containing a mutually agreed-upon list of frequently asked questions for Settlement Class Members;

xvi.   The Settlement Administrator shall maintain a toll-free hotline staffed by live operators to respond to inquiries by Settlement Class Members regarding the Settlement.  Counsel for the Parties shall agree upon and approve a script to provide to the Settlement Administrator which will be used to answer any such inquiries; and

xvii.   The Settlement Administrator shall execute a non-disclosure agreement.

B.      All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

C.      All costs of the Settlement Administrator relating to the Settlement Agreement shall be paid from the QSF and shall reduce the amount of the QSF available for allocation and distribution to Settlement Class Members.

D.      The QSF shall be distributed by the Settlement Administrator as follows:

a.   First, costs of the Settlement Administrator relating to the Settlement Agreement, including but not limited to the payment of any taxes (including any estimated taxes, interest, or penalties) due as a result of interest income, if any, earned by the QSF;

34

    b.  Second, all Court-approved attorneys' fees and litigation expenses;

    c.  Third, all Court-approved Class Representative incentive awards; and,

    d.  Fourth, distribution of the balance of the QSF, to Settlement Class Members, per the terms of the Court-approved QSF Allocation and Distribution Plan.

2.    <u>Authority of the Settlement Administrator to Adjust Claims</u>:  To assist the Settlement Administrator in some of its determinations, Counsel for Plaintiffs will provide the Settlement Administrator with guidelines relating the distribution of the QSF.

3.    <u>The QSF Allocation and Distribution Plan</u>:  The QSF shall be allocated and disbursed by the Settlement Administrator, who will be charged with acquiring and analyzing sufficient data to effectuate the distribution plan set forth below, which has been approved by Plaintiffs' Counsel and will be presented to the Court for approval as a fair and reasonable allocation for the QSF.

(a)    <u>Taxable Trust Accounts</u>:  Of the total amount available for distribution from the QSF, $500,000 will be allocated, as described below, to accounts once held in the Taxable Trust.

(i)    <u>Identify Contracts Closed on Request Resulting in a Loss of Principal</u>:  The Administrator will identify each Affected PreNeed Contract that:  (a) had funds subject to the Adjustment in the Taxable Trust, (b) was not closed on death in the records maintained by IFDA or on behalf of the Trust, and (c) was closed by request of

the PreNeed Contract Purchaser or Beneficiary in the records maintained by IFDA or on behalf of the Trust.  The Administrator will then determine whether the aggregate amount deposited into the account associated with the PreNeed Contract is greater than the sum of the aggregate amount paid out to the Purchaser or Beneficiary of the PreNeed Contract.

(ii)     Identify PreNeed Contracts Closed on Death After October 29, 2008:  The Administrator will identify each Affected PreNeed Contract that (a) had funds subject to the Adjustment in the Taxable Trust, and (b) was closed on death in the records maintained by IFDA or on behalf of the Trust.

(iii)    Identify Existing PreNeed Contracts:  The Administrator will identify each Affected PreNeed Contract that (a) had funds subject to Adjustment in the Taxable Trust, and (b) has not been closed by request or closed on death in the records maintained by IFDA or on behalf of the Trust.

(iv)    Calculate Proportionate Shares:  For each PreNeed Contract it identifies in Sections (ii) and (iii) above, the Administrator will determine the PreNeed Contract's proportionate share of any distribution based on the amount on deposit for that contract in the Taxable Trust as of October 28, 2008.

(v)     Compensate PreNeed Consumers Who Closed Their Contracts on Request:  If none of the Class Members associated as Trustee, Seller, Provider, Purchaser or Beneficiary of a specific

PreNeed Contract identified in Section (i) above have Opted Out of the Settlement Class, the Administrator will pay to the Provider of that PreNeed Contract the difference between the aggregate amount deposited into the PreNeed Contract and the aggregate amount paid out to the Purchaser or Beneficiary of the PreNeed Contract.  The Provider shall distribute the payment in accordance with the Pre-Need Contract and the provisions of the Burial Funds Act

(vi)     Compensate the Provider and Trustee Class for Existing PreNeed Contracts and PreNeed Contracts Closed on Death:  The remainder of the $500,000 fund will be allocated to the PreNeed Contracts identified in Sections (ii) and (iii) above in proportion to the shares calculated in Sections (iv) above.  If none of the Class Members associated as Trustee, Seller, Provider, Purchaser or Beneficiary of a specific PreNeed Contract assigned an allocation under this paragraph have Opted Out of the Settlement Class, the allocation will be paid directly to the Trustee or Provider for the PreNeed Contract.   Providers receiving funds pursuant to this Section will hold or distribute these funds in accordance with each respective PreNeed Contract and the Burial Funds Act.  If any Class Member associated as Trustee, Seller, Provider, Purchaser or Beneficiary of a PreNeed Contract assigned an allocation under this paragraph has Opted Out of the Settlement Class, the allocation shall be paid to the Illinois Office of the Comptroller, to be deposited in

the Illinois Pre-Need Funeral Consumer Protection Fund, established by 225 ILCS 45/1a-2.

(b) <u>Tax-Exempt Trust Accounts</u>: After allocation of the QSF in accordance with section IV.G.3(a) above, the remaining funds will be allocated, as described below, to accounts once held in the Tax-Exempt Trust.

(i) <u>Identify Contracts Closed on Request Resulting in a Loss of Principal</u>: The Administrator will identify each Affected PreNeed Contract that:  (a) was not closed on death prior to July 31, 2010 in the records maintained by IFDA or on behalf of the Trust; and (b) was closed by request of the PreNeed Contract Purchaser or Beneficiary in the records maintained by IFDA or on behalf of the Trust.  The Administrator will then determine whether the aggregate amount deposited into the account associated with the PreNeed Contract is greater than the sum of (i) the aggregate amount paid out to the Purchaser or Beneficiary of the PreNeed Contract plus (ii) the amount allocated to the PreNeed Contract from the ISD Fund.

(ii) <u>Identify PreNeed Contracts Closed on Death Between October 29, 2008 and July 31, 2010</u>: The Administrator will identify each Affected PreNeed Contract which was closed on death prior to July 31, 2010 in the records maintained by IFDA or on behalf of the Trust.

(iii) <u>Calculate the Proportionate Shares</u>:  For each Affected PreNeed Contract it identifies in paragraph (b)(ii) above, the Administrator will determine the PreNeed Contract's proportionate

share of any distribution based on the amount on deposit for that contract in the Tax-Exempt Trust as of October 28, 2008.

(iv)    <u>Compensate PreNeed Consumers Who Closed Their Contracts on Request</u>:  If none of the Class Members associated as Trustee, Seller, Provider, Purchaser or Beneficiary of a specific PreNeed Contract, identified in section (b)(i) above, have Opted Out of the Settlement Class, the Administrator will pay to the Provider of that PreNeed Contract the difference between (i) the aggregate amount deposited into the PreNeed Contract and the sum of (i) the aggregate amount paid out to the Purchaser or Beneficiary of the PreNeed Contract plus (ii) the amount allocated to the PreNeed Contract from the ISD Fund.  The Provider shall distribute the payment in accordance with the Pre-Need Contract and the provisions of the Burial Funds Act.

(v)    <u>Compensate the Provider and Trustee Class for PreNeed Contracts Closed on Death</u>:  All remaining funds will be allocated to the PreNeed Contracts identified in section (b)(ii) above in proportion to the shares calculated in section (b)(iii) above.  If none of the Class Members associated as Trustee, Seller, Provider, Purchaser or Beneficiary of a specific PreNeed Contract assigned an allocation under this paragraph have Opted Out of the Settlement Class, the allocation will be paid directly to the Provider for the PreNeed Contract.  The Provider will hold or distribute these funds in accordance with each respective PreNeed Contract and the Burial

Funds Act. If any Class Member associated as Trustee, Seller, Provider, Purchaser or Beneficiary of a PreNeed Contract assigned an allocation under this paragraph has Opted Out of the Settlement Class, the allocation shall be paid to the Illinois Office of the Comptroller, to be deposited in the Illinois Pre-Need Funeral Consumer Protection Fund, established by 225 ILCS 45/1a-2.

4.      Ability of Class Members to Contact the Settlement Administrator: The Settlement Administrator will provide a website, toll-free phone number and e-mail address that are active within seven (7) days of the Preliminary Approval of the settlement, the costs of which will be paid out of the QSF. The Released Entities may refer Class Members to the Settlement Administrator, the toll-free phone number, the website, and the e-mail address.

H.      Settlement Funding

1.      All payments into the QSF shall be treated as a payment of a Qualified Settlement Fund under I.R.C. §468B and the regulations or proposed regulations promulgated hereunder (including without limitation Treasury Reg. §1.468B-1-5 or any successor regulation).

2.      The QSF will be established pursuant to the Internal Revenue Code and insured and guaranteed to the full extent permissible under 12 CFR § 370.4. Any funds on deposit in the QSF shall be deemed and considered to be in *custodia legis* of the Court. The QSF will be created as a non-interest bearing account, unless there is an appeal regarding the approval of the Settlement Agreement, in which case the Settlement Administrator will:

a. Invest the QSF in Treasury Bills of no more than sixty (60) days in duration and other investments guaranteed by the US government and otherwise proper fiduciary investments in light of the expected length of investment and liquidity needs

required to meet the administration goals of distribution of the QSF to the

Settlement Classes at the earliest possible time; and

b.  Prepare any tax returns on any interest earned by the QSF and pay such taxes from

the QSF.

3.   <u>Advance Funds from Settlement</u>:  Within ten (10) business days of Preliminary

Approval by the Court, Defendants shall advance the following amounts from their respective

contributions set forth in section IV.D to the QSF to make funds available to pay for the class

notice program and other administrative expenses expected to be incurred pursuant to this

Settlement Agreement prior to entry of the Final Approval Order and Judgment:  MLPF&S

($50,000), the Sorling Defendants ($10,000) and IFDA ($10,000).  If additional amounts are

determined by the Settlement Administrator to be incurred before entry of the Final Approval

Order and Judgment, then, upon ten (10) business days' notice, the Defendants shall advance

additional amounts to the QSF as reasonably determined to be necessary, in proportion to their

respective contribution obligations to the QSF set forth in section IV.D.

4.   <u>Payment of Balance of QSF</u>:  Ten (10) business days after entry of the Final

Approval Order and Judgment by the Court, the Defendants shall pay into the QSF the balance of

the contributions under section IV.D not previously advanced to the QSF.

5.   <u>Return of Money from the QSF</u>:  If the Court does not enter the Final Approval

Order and Judgment or if the Final Approval Order and Judgment is subsequently overturned or

disapproved by any court, then all monies, including any earned interest, remaining in the QSF

shall be returned to Defendants from the QSF in proportion to their contribution into the QSF.

6.   <u>Release of Settlement Fund from the QSF</u>:  Funds held in the QSF that are not

advanced to pay for the class notice program and/or administrative expenses prior to the Effective

Date shall be released to the Settlement Administrator on the Effective Date for distribution by the

Settlement Administrator pursuant to section IV.G and the Court-approved QSF Allocation and Distribution Plan.

     I.    Miscellaneous Provisions Related to Administration of the QSF

     1.    Accounting:  The Settlement Administrator shall keep and maintain an account of all expenditures, awards, and records and documents received from, or on behalf of, each Affected PreNeed Contract and may share such information for an Affected PreNeed Contract with the Class Members who are Trustees, Beneficiaries, Purchasers, Sellers, or Providers for that Affected PreNeed Contract.  Other than as provided in this paragraph, the Settlement Administrator shall not disclose payments of settlement funds on an individual basis absent court order.

     2.    Deadline For Payment of Settlement Funds:  All payments to be made out of the QSF shall be mailed or distributed per the terms of the Settlement Agreement within 60 days of the Effective Date or such later date as determined by the Court.

     3.    Investment and Distribution of the QSF:  The Parties, Released Entities and their counsel shall not have any responsibility or liability whatsoever with respect to the investment or distribution of the Settlement Fund.  In addition, the Parties, Defendants, Released Entities, and their counsel shall not have responsibility for or liability whatsoever with respect to the determination, administration, calculation or payment to the Settlement Class from the Settlement Fund (except as specifically described in this Agreement) or any losses incurred in connection therewith.

## V.    OTHER PROVISIONS

     A.    No Admission

Nothing herein shall constitute any admission as to any assertion, claim, or allegation made by any party, or as to the scope of liability.  The Defendants specifically deny any wrongdoing or liability, and this Settlement Agreement is entered to resolve all claims amicably and does not

imply or suggest in any way fault or wrongdoing. The Parties hereto agree that this Settlement Agreement and its Exhibits, and any and all associated negotiations, documents, discussions, shall not be deemed or construed by anyone to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by Defendants or Released Entities, or of the suitability of Plaintiffs' claims for class certification, or of the proper scope of liability under any statute or law, or of the truth of any of the claims or allegations in any of the complaints in the Consolidated Class Actions, Affiliated Actions, or any other proceedings.

B.    <u>Mutual Non-Disparagement</u>

The Parties and parties to the Affiliated Actions agree not to make any disparaging remarks about or relating to any other named Party or the Released Entities concerning any of the matters which were the subject of the Consolidated Class Actions or the Affiliated Actions.

C.    <u>Settlement Agreement Inadmissible In Subsequent Litigation</u>

In the event that the Settlement contemplated by the Settlement Agreement is not approved or does not for any reason go forward, the existence of this Settlement Agreement and the Settlement Term Sheet, and any of their terms, will be inadmissible and excluded from evidence before any subsequent litigation to the full extent contemplated by Federal Rules of Evidence 408 and 501.

D.    <u>Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses</u>

1.    <u>Application</u>:  Counsel for Plaintiffs will apply to the Court for reimbursement of attorneys' fees in a total amount not to exceed Eleven Million, Five Hundred Fifty-Eight Thousand, Three Hundred Thirty-Two Dollars and Ninety-Nine Cents ($11,558,332.99) plus reimbursement of expenses and costs incurred by both Plaintiffs and Plaintiffs' Counsel in the Actions and Affiliated Actions.

2.    Defendants' Position:   Defendants will take no position on the application described in the previous section by Counsel for Plaintiffs for attorneys' fees and litigation expenses.

3.    Payment from QSF:   Any attorneys' fees and litigation expenses awarded by the Court to Counsel for Plaintiffs in connection with this Settlement Agreement shall be paid out of the QSF to Lead Settlement Class Counsel for distribution to additional plaintiffs' counsel per their signed written agreement or order of the Court.

4.    Timing of Payment:   The attorneys' fees and litigation expenses award shall be paid in their entirety from the QSF by the Settlement Administrator within ten (10) days of the Effective Date.

E.    Class Representatives' Incentive Awards

Counsel for Plaintiffs may petition for incentive awards for the Class Representatives. Any such petition shall be filed not less than thirty (30) days prior to the Final Approval Hearing Date or the date set by the Court. Any incentive awards approved by the Court in conjunction with the settlement shall be paid from the QSF and shall reduce the amount payable to the Settlement Class Members. Incentive awards to Class Representatives shall be in addition to their respective payments that the Class Representatives shall receive as Settlement Class Members. Incentive awards shall be distributed by the Settlement Administrator in separate checks mailed within ten (10) days after the Effective Date and shall be reported by the Settlement Administrator to state and federal taxing authorities as non-wage income on IRS Form 1099. Subject to Court approval, Counsel for Plaintiffs may seek, and Settling Parties will not oppose, incentive awards of up to Five Thousand Dollars ($5,000) each to the Class Representatives.

F.    Right to Rescind the Settlement Agreement

Defendants' willingness to settle the Consolidated Class Actions on a class-action basis and not to contest the accompanying certification of Settlement Classes is dependent upon achieving finality in the Consolidated Class Actions and the desire to avoid the expense of the Actions, Affiliated Actions, and other related litigation.  Consequently, each Defendant has the unilateral right, on its own behalf and not on behalf of any other Defendant, to terminate this Settlement Agreement, declare it null and void as to that Defendant, and have no further obligations under this Settlement Agreement by delivering a written notice of termination to all other Parties if any of the following conditions subsequent occurs:

1.    The Parties fail to obtain and maintain Preliminary Approval of the proposed settlement;

2.    The Court fails to enter a Final Approval Order and Judgment consistent with the provisions in section II.H.1;

3.    The settlement is not upheld on appeal;

4.    MLPF&S and the ISD fail to reach an ISD Agreement, or the ISD Agreement does not provide for the establishment of a fund of between Twenty-Five Million Dollars ($25,000,000) and Twenty-Six Million Dollars ($26,000,000) to be distributed substantially as described in section IV.F and Exhibit D.

5.    Releases and/or bar orders in favor of the Defendants and Released Entities by the following parties and non-parties that preclude all claims advanced or that could have been advanced in the Consolidated Class Actions, Affiliated Actions, or any other matter relating to the IFDA PreNeed Trust are not entered or executed: (a) Provider and Trustee Class; (b) Consumer Class; (c) IFDA; (d) I.F.D.A. Services, Inc.; (e) all current and former employees, officers, and directors of the IFDA and/or I.F.D.A. Services, Inc.; (f) Robert W. Ninker, Paul G. Dixon, Kevin

45

Burke, Rob Konzelmann, James D. Bosma, Geoffrey W. Hurd, Charles S. Childs Jr., Brent M. Davis, Derek S. Johnson, Jack R. Kynion, King Sutton, Randall L. Earl, David M. McReynolds, Dennis R. Davison, Richard D. Yurs, Eric R. Trimble, Chris Wooldridge, Donald Henderson, Steven Dawson, Michell Harrison, Michael Sayles, Vickie Diedrich, and Linda Allen; (g) Mark Cullen and Sorling, Northrup, Hanna, Cullen & Cochran, Ltd.

6.      The termination of the Settlement Agreement pursuant to this Section, by one or more of the Defendants, shall not increase any remaining Defendant's obligations under any Section of this Settlement Agreement.  In the event that one or more Defendant(s) exercise their right to terminate, then said Defendant(s) shall not be Released Parties.

The failure of the Court or any appellate court to approve in full the request by Counsel for Plaintiffs for attorneys' fees, costs, and other expenses or Class Representatives' incentive awards shall not be grounds for Plaintiffs or Counsel for Plaintiffs to cancel or terminate this Settlement Agreement.

If the Court does not enter a Final Approval Order and Judgment, or if the Final Approval Order and Judgment is not upheld on appeal, or is otherwise terminated for any reason before the Effective Date, the Settlement Classes shall be decertified; the Settlement Agreement and all negotiations, proceeding, and documents prepared, and statements made in connection therewith, shall be voided without prejudice to any Party or Released Entity and shall not be deemed or construed to be an admission or confession by any Party or Released Entity of any fact, matter, or proposition of law; and all Parties and Released Entities shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court, including but not limited to reservation of defenses including improper service and lack of personal jurisdiction.

F.      <u>Binding Effect</u>

Once the Final Approval Order and Judgment is granted by the Court, this Settlement Agreement shall be binding upon and inure to the benefit of the Parties, including each Settlement Class Member and their successors and assigns.

G.      <u>Choice of Law</u>

Claims for breach of this Settlement Agreement shall be governed by and interpreted according to the substantive law of the State of Illinois without regard to choice of law principles.

H.      <u>Execution of Counterparts</u>

The signatories may execute this Settlement Agreement in counterparts, each of which shall be deemed an original.

I.      <u>Entire Agreement; Amendment</u>

1.      This Settlement Agreement, with its Exhibits, constitutes the entire and complete agreement among the Parties and supersedes all prior agreements, documents and understanding of the Parties related to the subject matter of this Settlement Agreement, including the Settlement Term Sheet.

2.      This Agreement may be amended or modified only as provided by a written instrument executed by Counsel for Plaintiffs and Defendants' Counsel and approved by the Court.

J.      <u>Continuing Jurisdiction and Exclusive Venue</u>

1.      <u>Continuing Jurisdiction</u>.  Except as otherwise provided in this Agreement, the QSF and each of the Parties, including each member of the Settlement Class, and Releasing Parties that are otherwise subject to the jurisdiction of a United States court hereby irrevocably submits to the exclusive jurisdiction and venue of the Court for any suit, actions, proceeding, case, controversy,

or dispute arising and relating to this Agreement and/or Exhibits hereto and negotiation, performance, or breach of the same.

2.     <u>Parties Shall Not Contest Jurisdiction</u>.   In the event of a case, controversy, or dispute arising out of the negotiation of, approval of, performance of, or breach of this Settlement Agreement, and solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, (i) the Parties and Releasing Parties that are otherwise subject to the jurisdiction of a United States court irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that such Court is in any way in improper venue or an inconvenient forum.

K.     <u>Notices</u>

Any notice as to this Settlement Agreement shall be sent by First Class mail and e-mail to counsel for the Parties at the addresses listed below:

1.   For Provider and Trustee Plaintiffs: Edward Wallace, Wexler Wallace LLP, 55 West Monroe Street, Suite 3300, Chicago, IL, 60603. E-mail: eaw@wexlerwallace.com.

2.   For Consumer Plaintiffs: Robert M. Foote and Kathleen C. Chavez, Foote, Meyers, Mielke & Flowers LLC, 3 North Second Street, Suite 300, St. Charles, IL, 60174. E-mail: kchavez@foote-meyers.com.

3.   For Merrill Lynch Defendants: Peter Cooper and John Monical, Lawrence, Kamin, Saunders & Uhlenhop LLC, 300 S. Wacker Drive, Suite 500, Chicago, IL 60606. E-mail: pcooper@lksu.com and jmonical@lksu.com.

4. For MLTC: Elizabeth B. Herrington and Thomas A. McCann, McDermott Will & Emery LLP, 227 W. Monroe Street, Suite 5500, Chicago, IL 60606-5096.  E-mail: eherrington@mwe.com and tmccann@mwe.com.

5. For Sorling Defendants: Peter Sullivan, Hinshaw & Culbertson LLP, 222 N. LaSalle St., Suite 300, Chicago, IL 60601.  E-mail: psullivan@hinshawlaw.com.

6. For IFDA Defendants: Carrie Durkin, Litchfield Cavo LLP, 303 W. Madison St. Suite 300, Chicago, IL 60606.  E-mail: durkin@litchfieldcavo.com.

L.   Authority

Each of the undersigned Counsel for Plaintiffs and Defendants' Counsel represent that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement.  Each of the undersigned shall use his or her reasonable efforts to effectuate this Settlement Agreement.

M.   Mutual Full Cooperation

The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents as may be necessary to implement the terms of this Settlement Agreement.  The Parties shall use their best efforts to effectuate this Settlement Agreement, including during any appeals.  As soon as practicable after execution of this Settlement Agreement, Counsel for Plaintiffs shall, with the assistance and cooperation of Defendants' Counsel, take all necessary steps to secure entry of a Preliminary Approval Order and Final Approval Order and Judgment.  Class Representatives, Counsel for Plaintiffs, and Defendants each agree to abide by the terms of this Settlement Agreement in good faith and to support it fully, and shall cooperate in the defense of it from any legal challenge, whether by appeal or collateral attack.

N.     Non-Waiver.

No delay or omission by either Party in exercising any right under this Agreement shall operate as a waiver of that or any other right.  A waiver or consent given by a Party on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

O.     Communication with Customers, Business Contacts, and Members of the Public

In order to avoid possible misstatements or misquotations that may cause confusion among Class Members, the Parties and their counsel agree not to issue any press releases with respect to the existence or adoption of this Settlement Agreement, other than the Class Notice and such other press releases agreed to by Counsel for Plaintiffs and Defendants' Counsel, or to use the settlement as any part of their promotional material, or to notify or to comment to any media outlet regarding the Settlement Agreement.   Subject to this provision, the Class Representatives and Counsel for the Plaintiffs may explain the specific terms of the Settlement Agreement to their clients and the Class Members in meetings with or communications directed to the Class Members.   It shall not be a violation of this paragraph for MLPF&S and/or MLLA to issue press releases or comments relating to the ISD Agreement.

P.     No Party is the Drafter

None of the Parties to this Settlement Agreement shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule or interpretation or construction that might cause any provision to be construed against the drafter.

Q.     Computation of Time

In computing any period of time prescribed or allowed by this Settlement Agreement, the provisions of Federal Rule of Civil Procedure 6 shall govern.

R.     Cooperation

Class Representatives, Counsel for Plaintiffs, and Defendants' Counsel agree to move that the Court enter an order to the effect that should any Person desire any discovery incident to (or which the person contends is necessary to) the approval of this Agreement, the person must first obtain an order from the Court that permits such discovery.

S.     Settlement Agreement Form and Construction

(1)     To the extent necessary to effectuate the terms of this Settlement Agreement, including without limitation the meaning of any defined terms, the singular shall be construed as the plural and the plural construed as the singular, except where a plain reading of the language indicates that the use of the singular or plural is intended.

(2)     The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

(3)     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, Trustees, executors, administrators, successors and assigns.

(4)     The Notices will advise all Class Members of the binding nature of this Settlement Agreement.

(5)     This Settlement Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the released claims.

Agreed to this 15TH day of February, 2012.

By: _____
Edward A. Wallace
Wexler Wallace LLP

*On behalf of the Provider and Trustee Class.*

By: _____
Michael J. Nester
Donovan Rose Nester, P.C.

*On behalf of the Provider and Trustee Class.*

By: _____
Steven J. Roeder
Williams Montgomery & John Ltd.

*On behalf of the Provider and Trustee Class.*

By: _____
William Dowd
Dowd & Dowd P.C.

*On behalf of the Provider and Trustee Class.*

By: _____
John J. Driscoll
The Driscoll Firm. P.C..

*On behalf of the Provider and Trustee Class.*

By: _____
Robert M. Foote
Kathleen C. Chavez
Foote, Meyers, Mielke & Flowers, LLC

*On behalf of the Consumer Class*

By: _____
Peter E. Cooper
Lawrence, Kamin, Saunders & Uhlenhop LLC

*On behalf of MLPF&S, MLLA*

52

Agreed to this _____ day of _____, 2012.

By: _____
     Edward A. Wallace
     Wexler Wallace LLP

     *On behalf of the Provider and Trustee Class.*

By: _____
     Michael J. Nester
     Donovan Rose Nester, P.C.

     *On behalf of the Provider and Trustee Class.*

By: _____
     Steven J. Roeder
     Williams Montgomery & John Ltd.

     *On behalf of the Provider and Trustee Class.*

By: _____
     William Dowd
     Dowd & Dowd P.C.

     *On behalf of the Provider and Trustee Class.*

By: _____
     John J. Driscoll
     The Driscoll Firm. P.C..

     *On behalf of the Provider and Trustee Class.*

By: _____
     Robert M. Foote
     Kathleen C. Chavez
     Foote, Meyers, Mielke & Flowers, LLC

     *On behalf of the Consumer Class*

By: _____
     Peter E. Cooper
     Lawrence, Kamin, Saunders & Uhlenhop LLC

     *On behalf of MLPF&S, MLLA*

Agreed to this ____ day of _____, 2012.


By:    _____
       Edward A. Wallace
       Wexler Wallace LLP

       *On behalf of the Provider and Trustee Class.*


By:    _____
       Michael J. Nester
       Donovan Rose Nester, P.C.

       *On behalf of the Provider and Trustee Class.*


By:    _____
       Steven J. Roeder
       Williams Montgomery & John Ltd.

       *On behalf of the Provider and Trustee Class.*


By:    _____
       William Dowd
       Dowd & Dowd P.C.

       *On behalf of the Provider and Trustee Class.*


By:    _____
       John J. Driscoll
       The Driscoll Firm. P.C..

       *On behalf of the Provider and Trustee Class.*


By:    _____
       Robert M. Foote
       Kathleen C. Chavez
       Foote, Meyers, Mielke & Flowers, LLC

       *On behalf of the Consumer Class*


By:    _____
       Peter E. Cooper
       Lawrence, Kamin, Saunders & Uhlenhop LLC

       *On behalf of MLPF&S, MLLA*


                            52

By: _____

Elizabeth B. Herrington
Thomas A. McCann
McDermott Will & Emery LLP

*On behalf of Bank of America, N.A., Successor to MLTC*


By: _____

Phillip Stern
Michael Gurland
Neal, Gerber & Eisenberg LLP

*On behalf of Edward Schainker*


By: _____

Scott C. Helmholz
Bailey & Glasser, LLP

*On behalf of Mark Summer*


By: _____

Jeffrey J. Kalinowski
Bryan Cave LLP

*On behalf of Paul Felsch*


By: _____

Carrie A. Durkin
Jason E. Hunter
Litchfield Cavo LLP

*On behalf of Illinois Funeral Directors Association
and I.F.D.A. Services, Inc.*


By: _____

Robert W. Ninker


By: _____

Paul G. Dixon


53

By: _____
Elizabeth B. Herrington
Thomas A. McCann
McDermott Will & Emery LLP

*On behalf of Bank of America, N.A., Successor to MLTC*

By: _____
Phillip Stern
Michael Gurland
Neal, Gerber & Eisenberg LLP

*On behalf of Edward Schainker*

By: _____
Scott C. Helmholz
Bailey & Glasser, LLP

*On behalf of Mark Summer*

By: _____
Jeffrey J. Kalinowski
Bryan Cave LLP

*On behalf of Paul Felsch*

By: _____
Carrie A. Durkin
Jason E. Hunter
Litchfield Cavo LLP

*On behalf of Illinois Funeral Directors Association and I.F.D.A. Services, Inc.*

By: _____
Robert W. Ninker

By: _____
Paul G. Dixon

53

By: _____
     Elizabeth B. Herrington
     Thomas A. McCann
     McDermott Will & Emery LLP

     *On behalf of Bank of America, N.A., Successor to MLTC*


By: _____
     Phillip Stern
     Michael Gurland
     Neal, Gerber & Eisenberg LLP

     *On behalf of Edward Schainker*


By: _____
     Scott C. Helmholz
     Bailey & Glasser, LLP

     *On behalf of Mark Summer*


By: _____
     Jeffrey J. Kalinowski
     Bryan Cave LLP

     *On behalf of Paul Felsch*


By: _____
     Carrie A. Durkin
     Jason E. Hunter
     Litchfield Cavo LLP

     *On behalf of Illinois Funeral Directors Association and I.F.D.A. Services, Inc.*


By: _____
     Robert W. Ninker


By: _____
     Paul G. Dixon

By:     _____
        Elizabeth B. Herrington
        Thomas A. McCann
        McDermott Will & Emery LLP

        *On behalf of Bank of America, N.A., Successor to MLTC*


By:     _____
        Phillip Stern
        Michael Gurland
        Neal, Gerber & Eisenberg LLP

        *On behalf of Edward Schainker*


By:     _____
        Scott C. Helmholz
        Bailey & Glasser, LLP

        *On behalf of Mark Summer*

By:     _____
        Jeffrey J. Kalinowski
        Bryan Cave LLP

        *On behalf of Paul Felsch*


By:     _____
        Carrie A. Durkin
        Jason E. Hunter
        Litchfield Cavo LLP

        *On behalf of Illinois Funeral Directors Association
        and I.F.D.A. Services, Inc.*


By:     _____
        Robert W. Ninker


By:     _____
        Paul G. Dixon

By: _____
    Elizabeth B. Herrington
    Thomas A. McCann
    McDermott Will & Emery LLP

    *On behalf of Bank of America, N.A., Successor to MLTC*


By: _____
    Phillip Stern
    Michael Gurland
    Neal, Gerber & Eisenberg LLP

    *On behalf of Edward Schainker*


By: _____
    Scott C. Helmholz
    Bailey & Glasser, LLP

    *On behalf of Mark Summer*


By: _____
    Jeffrey J. Kalinowski
    Bryan Cave LLP

    *On behalf of Paul Felsch*

By: _____
    Peter D. Sullivan
    Hinshaw & Culbertson LLP

    *On behalf of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd.*
    *and Mark Cullen*


By: _____
    Carrie A. Durkin
    Jason E. Hunter
    Litchfield Cavo LLP

    *On behalf of Illinois Funeral Directors Association*
    *and I.F.D.A. Services, Inc.*

53

By: _____
Elizabeth B. Herrington
Thomas A. McCann
McDermott Will & Emery LLP

*On behalf of Bank of America, N.A., Successor to MLTC*


By: _____
Phillip Stern
Michael Gurland
Neal, Gerber & Eisenberg LLP

*On behalf of Edward Schainker*


By: _____
Scott C. Helmholz
Bailey & Glasser, LLP

*On behalf of Mark Summer*


By: _____
Jeffrey J. Kalinowski
Bryan Cave LLP

*On behalf of Paul Felsch*

By: _____
Carrie A. Durkin
Jason E. Hunter
Litchfield Cavo LLP

*On behalf of Illinois Funeral Directors Association
and I.F.D.A. Services, Inc.*


By: _____
Robert W. Ninker


By: _____
Paul G. Dixon

02/13/2012   17:14      2393936338      KEEPINTOUCHCONCEPTS      PAGE   02/02

By: _____
  Elizabeth B. Herrington
  Thomas A. McCann
  McDermott Will & Emery LLP

  *On behalf of Bank of America, N.A., Successor to MLTC*


By: _____
  Phillip Stern
  Michael Gurland
  Neal, Gerber & Eisenberg LLP

  *On behalf of Edward Schainker*


By: _____
  Scott C. Helmholz
  Bailey & Glasser, LLP

  *On behalf of Mark Summer*


By: _____
  Jeffrey J. Kalinowski
  Bryan Cave LLP

  *On behalf of Paul Felsch*


By: _____
  Carrie A. Durkin
  Jason E. Hunter
  Litchfield Cavo LLP

  *On behalf of Illinois Funeral Directors Association and I.F.D.A. Services, Inc.*


By: *Robert W. Ninker*
  Robert W. Ninker


By: _____
  Paul G. Dixon


53

By: _____

Elizabeth B. Herrington
Thomas A. McCann
McDermott Will & Emery LLP

*On behalf of Bank of America, N.A., Successor to MLTC*


By: _____

Phillip Stern
Michael Gurland
Neal, Gerber & Eisenberg LLP

*On behalf of Edward Schainker*


By: _____

Scott C. Helmholz
Bailey & Glasser, LLP

*On behalf of Mark Summer*


By: _____

Jeffrey J. Kalinowski
Bryan Cave LLP

*On behalf of Paul Felsch*


By: _____

Carrie A. Durkin
Jason E. Hunter
Litchfield Cavo LLP

*On behalf of Illinois Funeral Directors Association and I.F.D.A. Services, Inc.*


By: _____

Robert W. Ninker


By: _____

Paul G. Dixon

53

By:  _Kevin Burke_____
Kevin Burke

By:  _____
Rob Konzelmann

By:  _____
James D. Bosma

By:  _____
Geoffrey W. Hurd

By:  _____
Charles S. Childs, Jr.

By:  _____
Brent M. Davis

By:  _____
Derek S. Johnson

By:  _____
Jack R. Kynion

By:  _____
King Sutton

By:  _____
Randall L. Earl

By:  _____
David M. McReynolds

By:  _____
Dennis R. Davison

By: _____
Kevin Burke

By: _____
Rob Konzelmann

By: _____
James D. Bosma

By: _____
Geoffrey W. Hurd

By: _____
Charles S. Childs, Jr.

By: _____
Brent M. Davis

By: _____
Derek S. Johnson

By: _____
Jack R. Kynion

By: _____
King Sutton

By: _____
Randall L. Earl

By: _____
David M. McReynolds

By: _____
Dennis R. Davison

By: _____
    Kevin Burke

By: _____
    Rob Konzelmann

By: *James D. Bosma*
    James D. Bosma

By: _____
    Geoffrey W. Hurd

By: _____
    Charles S. Childs, Jr.

By: _____
    Brent M. Davis

By: _____
    Derek S. Johnson

By: _____
    Jack R. Kynion

By: _____
    King Sutton

By: _____
    Randall L. Earl

By: _____
    David M. McReynolds

By: _____
    Dennis R. Davison

By: _____
Kevin Burke

By: _____
Rob Konzelmann

By: _____
James D. Bosma

By: _____
Geoffrey W. Hurd

By: _____
Charles S. Childs, Jr.

By: _____
Brent M. Davis

By: _____
Derek S. Johnson

By: _____
Jack R. Kynion

By: _____
King Sutton

By: _____
Randall L. Earl

By: _____
David M. McReynolds

By: _____
Dennis R. Davison

By: _____
    Kevin Burke

By: _____
    Rob Konzelmann

By: _____
    James D. Bosma

By: _____
    Geoffrey W. Hurd

By: *Charles S. Childs*
    Charles S. Childs, Jr.

By: _____
    Brent M. Davis

By: _____
    Derek S. Johnson

By: _____
    Jack R. Kynion

By: _____
    King Sutton

By: _____
    Randall L. Earl

By: _____
    David M. McReynolds

By: _____
    Dennis R. Davison

2012-02-15 07:53 Davis Anderson            2178544373 >>                                      P 2/2

By: _____
Kevin Burke

By: _____
Rob Konzelmann

By: _____
James D. Bosma

By: _____
Geoffrey W. Hurd

By: _____
Charles S. Childs, Jr.

By: _____
Brent M. Davis

By: _____
Derek S. Johnson

By: _____
Jack R. Kynion

By: _____
King Sutton

By: _____
Randall L. Earl

By: _____
David M. McReynolds

By: _____
Dennis R. Davison

By: _____
Kevin Burke

By: _____
Rob Konzelmann

By: _____
James D. Bosma

By: _____
Geoffrey W. Hurd

By: _____
Charles S. Childs, Jr.

By: _____
Brent M. Davis

By: _Derek S. Johnson, Jr._____
Derek S. Johnson

By: _____
Jack R. Kynion

By: _____
King Sutton

By: _____
Randall L. Earl

By: _____
David M. McReynolds

By: _____
Dennis R. Davison

54

By: _____
    Kevin Burke

By: _____
    Rob Konzelmann

By: _____
    James D. Bosma

By: _____
    Geoffrey W. Hurd

By: _____
    Charles S. Childs, Jr.

By: _____
    Brent M. Davis

By: _____
    Derek S. Johnson

By: _____
    Jack R. Kynion

By: _____
    King Sutton

By: _____
    Randall L. Earl

By: _____
    David M. McReynolds

By: _____
    Dennis R. Davison

By: _____
    Kevin Burke

By: _____
    Rob Konzelmann

By: _____
    James D. Bosma

By: _____
    Geoffrey W. Hurd

By: _____
    Charles S. Childs, Jr.

By: _____
    Brent M. Davis

By: _____
    Derek S. Johnson

By: _____
    Jack R. Kynion

By: _____
    King Sutton

By: _____
    Randall L. Earl

By: _____
    David M. McReynolds

By: _____
    Dennis R. Davison

02/13/2012  19:48    6183440196           ALLAN AND CIUFERI                     PAGE  01/01

By: _____
    Kevin Burke

By: _____
    Rob Konzelmann

By: _____
    James D. Bosma

By: _____
    Geoffrey W. Hurd

By: _____
    Charles S. Childs, Jr.

By: _____
    Brent M. Davis

By: _____
    Derek S. Johnson

By: _____
    Jack R. Kynion

By: _____
    King Sutton

By: _Randall L. Earl_____
    Randall L. Earl

By: _____
    David M. McReynolds

By: _____
    Dennis R. Davison

By: _____
Kevin Burke

By: _____
Rob Konzelmann

By: _____
James D. Bosma

By: _____
Geoffrey W. Hurd

By: _____
Charles S. Childs, Jr.

By: _____
Brent M. Davis

By: _____
Derek S. Johnson

By: _____
Jack R. Kynion

By: _____
King Sutton

By: _____
Randall L. Earl

By: _____
David M. McReynolds

By: _____
Dennis R. Davison

54

By: _____
    Kevin Burke

By: _____
    Rob Konzelmann

By: _____
    James D. Bosma

By: _____
    Geoffrey W. Hurd

By: _____
    Charles S. Childs, Jr.

By: _____
    Brent M. Davis

By: _____
    Derek S. Johnson

By: _____
    Jack R. Kynion

By: _____
    King Sutton

By: _____
    Randall L. Earl

By: _____
    David M. McReynolds

By: _____
    Dennis R. Davison

54

By: _____
Richard D. Yurs

By: _____
Eric R. Trimble

By: _____
Chris Wooldridge

By: _____
Donald Henderson

By: _____
Steven Dawson

By: _____
Michelle Harrison

By: _____
Michael Sayles

By: _____
Vickie Diedrich

By: _____
Linda Allen

OM_US 31606535-1.043561.0027

By: _____
Richard D. Yurs

By: _____
Eric R. Trimble

By: _____
Chris Wooldridge

By: _____
Donald Henderson

By: _____
Steven Dawson

By: _____
Michelle Harrison

By: _____
Michael Sayles

By: _____
Vickie Diedrich

By: _____
Linda Allen

DM_US 31606535-1.043561.0027

55

By: _____
Richard D. Yurs

By: _____
Eric R. Trimble

By: _____
Chris Wooldridge

By: _____
Donald Henderson

By: _____
Steven Dawson

By: _____
Michelle Harrison

By: _____
Michael Sayles

By: _____
Vickie Diedrich

By: _____
Linda Allen

DM_US 31606535-1.043561.0027

55

By: _____
Richard D. Yurs

By: _____
Eric R. Trimble

By: _____
Chris Wooldridge

By: _____
Donald Henderson

By: _____
Steven Dawson

By: _____
Michelle Harrison

By: _____
Michael Sayles

By: _____
Vickie Diedrich

By: _____
Linda Allen

DM_US 31606535-1.043561.0027

By: _____
       Richard D. Yurs


By: _____
       Eric R. Trimble


By: _____
       Chris Wooldridge


By: _____
       Donald Henderson

By: _____
       Steven Dawson - STEPHEN DAWSON


By: _____
       Michelle Harrison


By: _____
       Michael Sayles


By: _____
       Vickie Diedrich


By: _____
       Linda Allen


DM_US 31606535-1.043561.0027


55

02/15/2012 13:51 FAX  18478241476          AWVC DES PLAINES                    ☑001/001

By: _____
    Richard D. Yurs

By: _____
    Eric R. Trimble

By: _____
    Chris Wooldridge

By: _____
    Donald Henderson

By: _____
    Steven Dawson

By: _____
    Michelle Harrison

By: _____
    Michael Sayles

By: _____
    Vickie Diedrich

By: _____
    Linda Allen

DM_US 31606535-1.043561 0027

By: _____
Richard D. Yurs

By: _____
Eric R. Trimble

By: _____
Chris Wooldridge

By: _____
Donald Henderson

By: _____
Steven Dawson

By: _____
Michelle Harrison

By: _____
Michael Sayles

By: _____
Vickie Diedrich

By: _____
Linda Allen

DM_US 31606535-1.043561.0027

By: _____
    Richard D. Yuro

By: _____
    Eric R. Trimble

By: _____
    Chris Wooldridge

By: _____
    Donald Henderson

By: _____
    Steven Dawson

By: _____
    Michelle Harrison

By: _____
    Michael Suttle

By: _____
    Walter Diedrich

By: _____
    Linda Allen

02/13/2012  18:23   6183440196                          ALLAN AND CIUFERI                          PAGE  01/01

By: _____
Richard D. Yurs

By: _____
Eric R. Trimble

By: _____
Chris Wooldridge

By: _____
Donald Henderson

By: _____
Steven Dawson

By: _____
Michelle Harrison

By: _____
Michael Sayles

By: _____
Vickie Diedrich

By: _____
Linda Allan

DM_US 31606595-1.043561.0027